IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| KONA GRILL, INC., et al.,[1] | ) ) ) | Case No. 19-10953 (   ) |
| Debtors. | ) ) ) ) | (Joint Administration Requested) |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
PURSUANT TO 28 U.S.C. § 156(c) (I) APPROVING THE RETENTION
AND APPOINTMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS
THE CLAIMS AND NOTICING AGENT TO THE DEBTORS, EFFECTIVE *NUNC
PRO TUNC* TO THE PETITION DATE AND (II) GRANTING RELATED RELIEF**

Kona Grill, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),[2] respectfully state the following in support of this application:

**Relief Requested**

1. The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**: (a) approving the services agreement, which is attached hereto as **Exhibit B** and incorporated herein by reference (the "Services Agreement"), between the Debtors and Epiq Corporate Restructuring, LLC ("Epiq") and the Debtors' retention and employment of Epiq as

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers include: Kona Grill, Inc. (6690); Kona Restaurant Holdings, Inc. (6703); Kona Sushi, Inc. (4253); Kona Macadamia, Inc. (2438); Kona Texas Restaurants, Inc. (4089); Kona Grill International Holdings, Inc. (1841); Kona Baltimore, Inc. (9163); Kona Grill International, Inc. (7911); and Kona Grill Puerto Rico, Inc. (7641). The headquarters and service address for the above-captioned Debtors is 15059 North Scottsdale Road, Suite 300, Scottsdale, Arizona 85254.

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this application and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of _____ in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on April 30, 2019 (the "Petition Date").

claims and noticing agent (the "Claims and Noticing Agent") for the Debtors in lieu of the Clerk (the "Clerk") of the United States Bankruptcy Court for the District of Delaware (the "Court") and for related relief, effective *nunc pro tunc* to the date hereof (the "Petition Date"); and (b) granting related relief.  In support of this application, the Debtors rely on the declaration of Kathryn Tran (the "Tran Declaration"), attached hereto as **Exhibit C** and incorporated herein by reference.

### Jurisdiction and Venue

2.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The bases for the relief requested herein are section 156(c) of title 28 of the United States Code (the "Judicial Code"), sections 105(a) and 503(b) of title 11 of the United States Code (the "Bankruptcy Code"), Local Rule 2002-1(f), and the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, instituted by the Clerk on February 1, 2012 (the "Claims Agent Protocol").

**Services to Be Provided**

5.  This application pertains only to the work to be performed by Epiq under the Clerk's delegation of duties permitted by section 156(c) of the Judicial Code, Local Rule 2002-1(f), and the Claims Agent Protocol, and any work to be performed by Epiq outside of this scope is not covered by this application or by any order granting approval thereof. Specifically, Epiq will perform, to the extent the Debtors request, the following services in its role as Claims and Noticing Agent (the "Claims and Noticing Services"), as well as all quality control relating thereto:

   a.  preparing and serving required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including, if applicable, (i) notice of the commencement of the cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code, (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' chapter 11 plan, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtors and/or the Court may deem necessary or appropriate for an orderly administration of the chapter 11 cases;

   b.  preparing and filing or causing to be filed with the Clerk an affidavit or certificate of service for all notices, motions, orders, other pleadings, or documents served within seven business days of service that includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

   c.  maintaining an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

   d.  maintaining (i) a list of all potential creditors, equity holders, and other parties in interest, and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002 and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010;

e. furnishing a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notifying said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

f. maintaining a post office box or address for the purpose of receiving claims and returned mail, and processing all mail received;

g. processing all proofs of claim received, including those received by the Clerk's office, and checking said processing for accuracy, and maintaining the original proofs of claim in a secure area;

h. maintaining an electronic platform for purposes of filing proofs of claim;

i. maintaining the official claims register for each Debtor (the "Claims Registers") on behalf of the Clerk and upon the Clerk's request, providing the Clerk with certified, duplicate unofficial Claims Registers; and specifying in the Claims Registers the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

j. providing public access to the Claims Registers, if any, including complete proofs of claim with attachments, if any, without charge;

k. implementing necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

l. recording all transfers of claims and providing any notices of such transfers as required by Bankruptcy Rule 3001(e);

m. relocating, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Epiq, not less than weekly;

n. upon completion of the docketing process for all claims received to date for each case, turning over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

o. monitoring the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed, and making necessary notations on and/or changes to the Claims Registers and any

    service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

p.  assisting in the dissemination of information to the public and responding to requests for administrative information regarding the cases, as directed by the Debtors and/or the Court, including through the use of a case website and/or call center;

q.  if the case is converted to chapter 7, contacting the Clerk's Office within three days of the notice to Claims and Noticing Agent with entry of the order converting the case;

r.  thirty days prior to the close of these cases, to the extent practicable, requesting that the Debtors submit to the Court a proposed order dismissing Epiq and terminating Epiq's services upon completion of its duties and responsibilities and upon the closing of these cases;

s.  within seven days' notice to Epiq of entry of an order closing the chapter 11 cases, providing to the Court the final version of the Claims Registers as of the date immediately before the close of the cases; and

t.  at the close of these cases, boxing and transporting all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, Missouri 64064, or (ii) any other location requested by the Clerk's Office.

6.  The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Epiq. Epiq shall not employ any past or present employee of the Debtors for work that involves the Debtors' bankruptcy cases.

7.  Epiq will follow the notice and claims procedures that conform to the guidelines promulgated by the Clerk's office or as otherwise directed by the Court.

### Epiq's Qualifications

8.  Epiq is one of the country's leading chapter 11 administrators, with significant experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases. Epiq has substantial experience providing services,

including claims and noticing services, in matters comparable in size and complexity to this matter. *See, e.g., In re Mattress Firm, Inc.* No. 18-12241 (CSS) (Bankr. D. Del Oct. 5, 2018); *In re Herald Media Holdings, Inc.* No. 17-12881 (LSS) (Bankr. D. Del. Dec. 8, 2017); *In re Maurice Sporting Goods, Inc.,* No. 17-12481 (CSS) (Bankr. D. Del. Nove. 20, 2017); *In re Model Reorg Acquisition, LLC,* No. 17-11794 (CSS) (Bankr. D. Del. Aug. 26, 2017); *In re Original Soupman, Inc.,* No. 17-11313 (LSS) (Bankr. D. Del. Jun 13, 2017); *In re CST Industries Holdings Inc.,* No. 17-11292 (BLS) (Bankr. D. Del. Jun 09, 2017); *In re Tidewater Inc.,* No. 17-11132 (BLS) (Bankr. D. Del May 17, 2017); *In re AtopTech, Inc.,* No. 17-10111 (MFW) (Bankr. D. Del Jan. 13, 2017).[3]

9. By appointing Epiq as the Claims and Noticing Agent in these cases, the distribution of notices and the processing of claims will be expedited, and the Clerk's office will be relieved of the administrative burden of processing such claims.

**Indemnification Provisions**

10. As part of the overall compensation payable to Epiq under the terms of the Services Agreement, the Debtors have agreed to certain indemnification obligations as specifically enumerated in the Services Agreement. The Services Agreement contains the standard indemnification language with respect to Epiq's services including, but not limited to, the following:

> a. The Debtors agree to indemnify and hold harmless Epiq, its affiliates, and their respective personnel (collectively, the "Indemnified Persons") from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to the Services Agreement or Epiq's rendering of services pursuant thereto, other

---

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this application. Copies of these orders are available upon request of the Debtors' proposed counsel.

than Losses to the extent resulting from Epiq's gross negligence or willful misconduct.

    b.    Indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of the Debtors, and shall survive termination of the Services Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

11.    The Debtors and Epiq believe that the indemnification provisions contained in the Services Agreement are necessary, customary, and reasonable for Epiq and comparable firms providing claims and noticing services.

### Compensation and Representation of Disinterestedness

12.    The Debtors respectfully request that the undisputed fees and expenses incurred by Epiq in the performance of the above services be treated as administrative expenses of the Debtors' estates pursuant to section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court. Epiq agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee for the District of Delaware, counsel for the Debtors, counsel for any official committee, if any, monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Services Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute. If resolution is not achieved, the parties may seek resolution of the matter from the Court.

13.    Prior to the Petition Date, the Debtors provided Epiq a retainer in the amount of $25,000. Epiq seeks to first apply the retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount, and thereafter, Epiq may hold such retainer under the Services Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Services Agreement.

14. In connection with its retention as the Claims and Noticing Agent, Epiq represents in the Tran Declaration, among other things, that:

    a. Epiq will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in the cases;

    b. by accepting employment in the cases, Epiq waives any rights to receive compensation from the United States government in connection with the Debtors' cases;

    c. in its capacity as the Claims and Noticing Agent in the cases, Epiq will not be an agent of the United States and will not act on behalf of the United States; and

    d. Epiq is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

15. To the extent that there is any inconsistency between this application, the Order, and the Services Agreement, the Debtors respectfully submit that the Order shall govern.

## Compliance with the Claims Agent Protocol

16. The Debtors represent that this application complies with the Claims Agent Protocol and conforms to the standard section 156(c) application used in this district.

## Basis for Relief

17. This application is made pursuant to section 156(c) of the Judicial Code, section 105(a) of the Bankruptcy Code, Local Rule 2002-1(f), and the Claims Agent Protocol for an Order appointing Epiq as the Claims and Noticing Agent in order to assume full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Debtors' cases.

18. Section 156 of the Judicial Code, in relevant part, provides:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases

> filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

19. Section 105 of the Bankruptcy Code, in relevant part, provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

20. Local Rule 2002-1(f) provides:

> Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c). In all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven (7) days thereafter. The notice and/or claims clerk shall comply with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) (which can be found on the Court's website) and shall perform the [Claims and Noticing Services].

Del. Bankr. L.R. 2002-1(f).

21. In accordance with the Claims Agent Protocol, prior to the selection of Epiq, the Debtors reviewed and compared engagement proposals from three court-approved claims and noticing agents, including Epiq, to ensure selection through a competitive process. The Debtors submit, based on the engagement proposals obtained and reviewed, that Epiq's rates are competitive and reasonable given Epiq's quality of services and expertise. The terms of Epiq's retention are set forth in the Services Agreement; *provided* that Epiq is seeking by this application

approval solely of the terms and provisions as set forth in this application and the Order as set forth in **Exhibit A**.

22. The Debtors anticipate that there will be more than 10,000 entities to be noticed. In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of Epiq as the Claims and Noticing Agent is both necessary and in the best interests of the Debtors' estates and their creditors because the Debtors will be relieved of the burdens associated with the Claims and Noticing Services. Accordingly, the Debtors will be able to devote their full attention and resources to the restructuring efforts described above.

### *Nunc Pro Tunc* Relief Is Appropriate

23. Pursuant to the Debtors' request, Epiq has acted as the Claims and Noticing Agent since the Petition Date with assurances that the Debtors would seek approval of its employment and retention, effective *nunc pro tunc* to the Petition Date, so that Epiq may be compensated for its pre-application services. The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment of Epiq, because Epiq has provided and continues to provide valuable services to the Debtors' estates in the interim period.

24. Courts in this jurisdiction have routinely approved *nunc pro tunc* employment similar to that requested herein in matters comparable to this matter. *See e.g., In re The Walking Company Holdings, Inc.*, 18-10474 (LSS) (Bankr. D. Del. Mar. 8, 2018) (approving *nunc pro tunc* employment of a claims and noticing agent to perform claims and noticing services); *In re Nuverra Envt'l Solutions, Inc.*, No. 17-10949 (KJC) (Bankr. D. Del. May 2, 2017) (same); *In re Venoco, LLC*, No. 17-10828 (KG) (Bankr. D. Del. Apr. 18, 2017) (same); *In re Emerald Oil, Inc.*, No. 16-10704 (KG) (Bankr. D. Del. Mar. 24, 2016) (same); *In re Molycorp, Inc.*, No. 15-11357 (CSS)

(Bankr. D. Del. June 26, 2015) (same); *In re EveryWare Glob., Inc.*, No. 15-10743 (LSS) (Bankr. D. Del. Apr. 9, 2015) (same).

25. Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Judicial Code, the Local Rules, and the Claims Agent Protocol. Accordingly, the Debtors respectfully request entry of the Order pursuant to section 156(c) of the Judicial Code, Local Rule 2002-1(f), and the Claims Agent Protocol authorizing the Debtors to retain and employ Epiq to act as Claims and Noticing Agent, effective *nunc pro tunc* to the Petition Date.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

26. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

27. Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) Key Bank National Association and Zions Bank, (c) parties asserting liens against the Debtors' assets, and (d) the Debtors' thirty largest unsecured creditors on a consolidated basis. As the Motion is seeking "first day" relief, within two business days after the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Del. Bankr. LR 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

28. No prior request for the relief sought in this application has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: April 30, 2019

/s/ Christopher J. Wells
Christopher J. Wells
Chief Restructuring Officer