IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| KONA GRILL, INC., et al.,[1] | ) Case No.: 19-10953 (___) |
| | ) Joint Administration Requested |
| Debtors. | ) |
| | ) |

**DEBTORS' MOTION PURSUANT TO SECTIONS 105(A), 507(A)(8), AND 541(D) OF THE BANKRUPTCY CODE FOR AN INTERIM AND FINAL ORDER AUTHORIZING THE PAYMENT OF PREPETITION SALES, USE AND FRANCHISE AND INCOME TAXES, AND SIMILAR TAXES AND FEES**

The debtors and debtors in possession in the above-captioned cases (the "Debtors") hereby submit this motion (the "Motion") for the entry of an interim and final order, substantially in the form annexed hereto as Exhibit A, pursuant to sections 105(a), 507(a)(8), and 541(d) of title 11 of the United States Code (the "Bankruptcy Code") (i) authorizing, but not directing, the Debtors to pay certain prepetition taxes, including, sales and use taxes, franchise and income taxes, regulatory fees, permits and similar taxes and fees in the ordinary course of business, as the Debtors, in their sole discretion, deem necessary; and (ii) authorizing banks and financial institutions to receive, process, honor and pay all checks and transfers related thereto. In support of the Motion, the Debtors respectfully state as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers include: Kona Grill, Inc. (6690); Kona Restaurant Holdings, Inc. (6703); Kona Sushi, Inc. (4253); Kona Macadamia, Inc. (2438); Kona Texas Restaurants, Inc. (4089); Kona Grill International Holdings, Inc. (1841); Kona Baltimore, Inc. (9163); Kona Grill International, Inc. (7911); and Kona Grill Puerto Rico, Inc. (7641). The headquarters and service address for the above-captioned Debtors is 15059 North Scottsdale Road, Suite 300, Scottsdale, Arizona 85254.

## Jurisdiction

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief sought herein are sections 105(a), 507(a)(8), and 541(d) of the Bankruptcy Code.

Background

4. On the date hereof (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed in the Debtors' chapter 11 cases.

5. The factual background regarding the Debtors, including their current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of Christopher J. Wells in Support of First Day Pleadings* (the "First Day Declaration") filed concurrently herewith and fully incorporated herein by reference.

## The Debtors' Tax Obligations

6. In the ordinary course of business, the Debtors collect and pay taxes, including, but not limited to, sales and use taxes, franchise taxes, commercial activity taxes, and certain other business license fees, to various taxing authorities in multiple jurisdictions (the "Taxing Authorities"), as described below.

**A.    Sales and Use Taxes**

7. The Debtors collect and remit sales, use and related taxes ("Sales and Use Taxes") to the Taxing Authorities in twenty-two (22) states and Puerto Rico. The Debtors' liability for Sales and Use Taxes is incurred daily through tax collection from consumers at the time of restaurant or internet sales transactions. In general, the Debtors remit such collections to the applicable Taxing Authorities generally starting on or about the 15th day of the following month.[2] The Debtors estimate that as of the Petition Date they owe approximately $1,250,000 in unremitted Sales and Use Taxes for the month of April 2019. In addition, while the Debtors do not presently have any ongoing sales tax audits pending, through this Motion, the Debtors request authority to pay any amounts determined to be owed on any audits that may be commenced after the Petition Date. The Sales and Use Taxes collected by the Debtors are collected in trust for the benefit of

---

[2] Illinois requires a weekly prepayment per their calculation, and a few other states in which the Debtors operate (FL, GA, AL, and MO) require either a deposit or an estimated prepayment of the current month's collections.

3

certain taxing authorities and not property of the estate while other states the Debtors owe the collection of such taxes for the benefit of such taxing authorities.

**B.     Franchise and Income Taxes**

8.    The Debtors are required to pay franchise taxes (the "Franchise Taxes") to certain Taxing Authorities to operate their businesses in the applicable taxing jurisdiction. Certain states may refuse to qualify a debtor to do business in a state or recognize a name change, merger or other activity if franchise taxes have not been paid. Most jurisdictions assess franchise taxes on an annual basis, in arrears or for the privilege to transact business in an upcoming period. In addition, the Debtors are required to pay income taxes federally and in the states the operate. As of the Petition Date, the Debtors believe that they are current on the payment of Franchise Taxes and income taxes that are payable through the Petition Date. Out of an abundance of caution, the Debtors request authority to pay up to $100,000 on account of prorated Franchise Taxes and income taxes for any prepetition amounts owing, which the Debtors expect will come due by the end of June 2019.

**C.     Commercial Activity Taxes**

9.    In Ohio, the Debtors pay a tax for the privilege of doing business within such jurisdiction. The tax is measured by taxable gross receipts from most business operations. The first $1,000,000 is subject to a flat tax of $150 but receipts above this amount are taxed at a rate of 0.26%. The Debtors estimate that the unpaid Ohio related tax will be approximately $10,000 for the first fourth months of 2019. The next tax payment becomes due and payable on or about

May 10, 2019, which relates to the first quarter of 2019, the April 2019 portion of the second quarter will become due in August 2019.

**D.    Personal Property Taxes**

10.    The Debtors are required to pay personal property taxes (the "Personal Property Taxes") in connection with their ownership and use of personal property to applicable taxing jurisdictions. If these taxes are not paid when due, certain Taxing Authorities may impose liens against the subject personal property upon non-payment. Most jurisdictions assess personal property taxes on an annual or semi-annual basis. The Debtors believe that they are current on the payment of Personal Property Taxes. As of the Petition Date, the Debtors estimate that approximately $450,000 in Personal Property Taxes will become due in 2019 relating to the period prior to the Petition Date. Accordingly, the Debtors request authority to pay up to $450,000 in Personal Property Taxes as they become due in the ordinary course of business.

**E.    Business Licenses, Permits, and Other Fees**

11.    The Debtors are required to pay various taxes and fees for business licenses, liquor licenses, annual reports, permits, and other similar types of obligations (the "Business Fees") in order to continue conducting their business in conformity with state and local laws. The Debtors remit required amounts for the Business Fees on a monthly, quarterly, or annual basis, depending on the requirements of the particular Taxing Authority or governmental authority. As of the Petition Date, the Debtors do not believe there are any Business Fees due and owing. Out of an abundance of caution, however, the Debtors request authority to pay any such Business Fees up to an amount of $25,000.

## Relief Requested

12.     By this Motion, the Debtors seek entry of an interim and final order pursuant to sections 105(a), 507(a)(8), and 541(d) of the Bankruptcy Code, authorizing the Debtors to pay any Sales and Use Taxes or Franchise Taxes, Commercial Activity Taxes, Personal Property Taxes and Business Fees (collectively, the "Prepetition Tax Obligations") to the respective Taxing Authorities or to the parties who ordinarily collect the Prepetition Tax Obligations in the ordinary course of the Debtors' business, including, without limitation, Sales and Use Taxes and other Taxes subsequently determined on audit to be owed for periods prior to the Petition Date. The Debtors seek authority to remit Prepetition Tax Obligations in an aggregate amount (excluding amounts paid prepetition by checks that have not yet cleared[3] and amounts that may be subsequently determined on sales tax audit or adjustment to be owed a particular Taxing Authority or party who ordinarily collects the Prepetition Tax Obligations) not to exceed $1,835,000 (the "Prepetition Tax Obligations Cap"), without prejudice to the Debtors' rights to contest the amounts of any Prepetition Tax Obligations on any grounds they deem appropriate.[4]

13.     The Debtors also request that all banks and other financial institutions on which checks to third parties are drawn and/or electronic payments are made pursuant to this Motion be authorized to receive, process, honor, and pay any and all such checks (whether issued

---

[3] The Debtors request authority to reissue any amounts paid by check prepetition that have not cleared as of the Petition Date and are dishonored.

[4] Nothing in this Motion shall be deemed to constitute an admission to any asserted liability or obligation with respect to any Tax. The Debtors reserve any and all rights to contest any Tax asserted against them by any Taxing Authority.

or presented prior to or after the Petition Date) and electronic payments, and to rely on the representations of the Debtors as to which checks are authorized to be paid.[5]

### Basis for Relief

14. The Court should grant the relief requested herein because: (i) portions of the Prepetition Tax Obligations are not property of the estate; (ii) portions of the Prepetition Tax Obligations are entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code; (iii) the Taxing Authorities or the parties who ordinarily collect the Prepetition Tax Obligations may file liens, initiate audits, or otherwise proceed against the Debtors for unpaid Prepetition Tax Obligations and such actions will result in unnecessary expense and distraction from the Debtors' efforts to maximize the value of their estates; (iv) failure to pay Business Fees may not only affect current operations, but also the Debtors' ability to open new stores as contemplated; and, (v) section 105(a) of the Bankruptcy Code and the Court's general equitable powers permit the Court to grant such relief.

**F.    Certain of the Taxes Are Not Property of the Debtors' Estate**

15. The Debtors' payment of the Prepetition Tax Obligations, though arguably a payment of a prepetition claim, is justified in large part because certain of these amounts are not property of the Debtors' estates pursuant to section 541(d) of the Bankruptcy Code. Specifically, section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . .

---

[5] Contemporaneously herewith, the Debtors have filed a motion seeking authority to continue to utilize their cash management system (the "Cash Management Motion"). Details regarding accounts used by the Debtors to pay all obligations in the ordinary course, including taxes, are described in the Cash Management Motion.

. becomes property of the estate under subsection (a)(1) or (2) of this section <u>only</u> to the extent of the debtors' legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d) (emphasis added).

16.   Consistent with section 541(d) of the Bankruptcy Code, courts have held that certain types of taxes are not part of a debtor's estate. *See, e.g., Begier v. Internal Revenue Serv.*, 496 U.S. 53, 57-60 (1990) (holding that any prepetition payment of trust fund taxes is not a transfer subject to avoidance because such funds are not the debtor's property); *DuCharmes & Co., Inc. v. Mich. (In re DuCharmes & Co.)*, 852 F.2d 194 (6th Cir. 1988) (per curiam) (same); *Shank v. Wash. State Dept. of Revenue (In re Shank)*, 792 F.2d 829, 833 (9th Cir. 1986) (sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax and not released by bankruptcy discharge); *DeChiaro v. New York State Tax Comm'n*, 760 F.2d 432, 435-36 (2d Cir. 1985) (same); *Rosenow v. Ill. Dept. of Revenue (In re Rosenow)*, 715 F.2d 277, 279-82 (7th Cir. 1983) (same); *Western Surety Co. v. Waite (In re Waite)*, 698 F.2d 1177, 1179 (11th Cir. 1983) (same).

17.   Here, the Sales and Use Taxes constitute amounts held in trust, which the Debtors are required to collect and/or hold in trust for payment to the Taxing Authorities. To the extent these Sales and Use Taxes constitute "trust fund" taxes, they are not property of the Debtors' estates under section 541(d) of the Bankruptcy Code. *See In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 104-05 (Bankr. E.D. Pa. 1987); *In re Dameron*, 155 F.3d 718, 721-22 (4th Cir. 1998) (funds from various lenders held by closing agent in trust for designated third parties not property of debtor's estate). Given that the Debtors do not have an equitable interest in such Sales and Use

Taxes, the Debtors should be permitted to remit these Sales and Use Taxes to the Taxing Authorities as they become due, irrespective of the commencement of this case.

### G. Payment of the Prepetition Tax Obligations Will Avoid Unnecessary Distractions

18. Any regulatory dispute or delinquency that impacts the Debtors' ability to conduct business in a particular jurisdiction could have a wide-ranging and adverse effect on the Debtors' business operations and restructuring efforts. Specifically, the Debtors' failure to remit the Prepetition Tax Obligations could adversely affect the Debtors' remaining business operations because, among other things (a) the Taxing Authorities could initiate audits of the Debtors or prevent the Debtors from continuing their business and administering their estate, which, even if unsuccessful, would unnecessarily divert the Debtors' attention from the process of maximizing the value of their estate; (b) the Taxing Authorities could attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay and pursue other remedies that will harm the estate; (c) some of the Taxing Authorities may seek to collect penalties, cancel licenses, or undertake other unfavorable enforcement actions if the Debtors do not pay the taxes; and (d) certain directors, officers and employees might be subject to personal liability -- even if such a failure to remit such Prepetition Tax Obligations was not a result of malfeasance on their part -- which would undoubtedly distract these key employees from their duties related to the Debtors' restructuring. In fact, the Taxing Authorities may take such actions regardless of this chapter 11 filing. *See, e.g.*, 11 U.S.C. §§ 362(b)(9) (permitting tax audits and assessments) and 362(b)(18) (allowing creation or perfection of liens for property taxes).

19. Accordingly, the Debtors respectfully request the authority to remit the Prepetition Tax Obligations as they become due to ensure that they remains focused on their business operations and restructuring efforts.

### H.  Certain of the Prepetition Tax Obligations May Constitute Priority Claims

20. The Debtors submit that authorizing the payment of the Prepetition Tax Obligations is in the best interests of their creditors and estates because substantially all of the Prepetition Tax Obligations constitute priority claims that will be paid in full in the Debtors' bankruptcy cases. Accordingly, the proposed relief will only affect the timing of the payment of the Prepetition Tax Obligations and not whether such amounts will be paid. As such, payment of the Prepetition Tax Obligations will not prejudice the rights of general unsecured creditors or other parties in interest.

21. Moreover, to the extent that such claims are entitled to priority treatment under section 507(a)(8)(B) of the Bankruptcy Code, the respective Taxing Authorities may attempt to assess interest and penalties. *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss").

22. Further, the failure to pay certain of the Prepetition Tax Obligations may adversely affect the Debtors' ability to maintain their good standing to operate in the jurisdictions in which it does business, to conduct business in those jurisdictions, and to administer their estates for the benefit of their creditors.

23. In sum, payment of the Prepetition Tax Obligations is in the best interest of the Debtors and their estates, will not harm unsecured creditors and other parties in interest, and will reduce harm and administrative expense to the Debtors' estates.

24. Similar relief is routinely granted by courts in this district and elsewhere. *See, e.g., In re True Religion Apparel, Inc.*, Case No. 17-11460 (CSS) (Bankr. D. Del. Jul. 31, 2017); *In re GST AutoLeather, Inc.*, Case No. 17-12100 (LSS) (Bankr. D. Del. Oct. 27, 2017); *In re M & G USA Corporation*, Case No. 17-12307 (BLS) (Bankr. D. Del. Nov. 30, 2017); *In re American Apparel, LLC*, Case No. 16, 12551 (BLS) Bankr. D. Del. Nov. 15, 2016); *In re Garden Fresh Restaurant Intermediate Holding, LLC*, Case No. 16-12174 (CSS) (Bankr. D. Del. Oct. 3, 2016); *In re Cache, Inc.*, Case No. 15-10172 (MFW) (Bankr. D. Del. Feb. 4, 2015).

I.  **Payment of the Prepetition Tax Obligations is Warranted Under the Doctrine of Necessity**

25. Courts generally acknowledge that, under appropriate circumstances, they may authorize a debtor to pay (or provide special treatment for) certain prepetition obligations. *See, e.g., In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (Bankr. D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the debtor's business); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting the debtor the authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential lien claimants). When authorizing payments of certain prepetition obligations, courts have relied upon several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code.

26.  Consistent with a debtor's fiduciary duties, where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors," courts have authorized debtors to make such payments under section 363(b) of the Bankruptcy Code. *See, e.g., In re Ionosphere Clubs, Inc.* 98 B.R. at 175 (finding that a sound business justification existed to pay prepetition wages); *In re James A. Phillips, Inc.*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).

27.  Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may permit payments of prepetition obligations when such payments are essential to the continued operation of the debtor's business and, in particular, where nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtors' business reorganization plan. *See In re UNR Indus.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting the debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); *Ionosphere Clubs*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

DOCS_LA:321285.8

28.     In addition to the authority granted to a debtor in possession under sections 105(a) and 363(b) of the Bankruptcy Code, courts have developed the "doctrine of necessity" or the "necessity of payment" rule, which originated in the landmark case of *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1882). Since *Miltenberger*, courts have expanded their application of the doctrine of necessity to cover instances of a debtor's reorganization, *see Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (holding, in a hotel reorganization matter, that the court was not "helpless" to apply the rule to supply creditors where the alternative was the cessation of operations), including the United States Court of Appeals for the Third Circuit, which recognized the doctrine in *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981).

29.     In *Lehigh*, the United States Court of Appeals for the Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating that a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *In re Just for Feet, Inc.*, 242 B.R. at 824-25 (noting that debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

30.     The necessity of payment doctrine is designed to foster the rehabilitation of a debtor in reorganization cases, which courts have recognized is "the paramount policy and goal

13

of Chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176; *Just For Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization."); *see also In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code", but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (finding that it is appropriate to provide for the "unequal treatment of pre-petition debts when [such treatment is] necessary for rehabilitation . . . ."); 3 COLLIER ON BANKRUPTCY ¶ 105.04[5][a] (15th ed. rev. 2004) (discussing cases in which courts have relied upon the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

31.   Here, the Debtors' payment of the Prepetition Tax Obligations is an exercise of sound business judgment is vital to the Debtors' restructuring efforts and is necessary to maximize the value of the Debtors' estates for the benefit of their creditors. If the Debtors do not continue paying the Prepetition Tax Obligations when they come due on a timely basis, it is very possible that Taxing Authorities or those parties who ordinarily collect the Prepetition Tax

14

Obligations may seek to interfere with the Debtors' businesses and the efficient administration of the estates.

### J. Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers

32. In connection with the payment of the Prepetition Tax Obligations, the Debtors also request that all applicable banks and other financial institutions be authorized to receive, process, honor, and pay all checks presented for payment, and to honor all electronic payment requests made by the Debtors related to the prepetition obligations described herein, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date. The Debtors further request that all such banks and financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion. The Debtors intend to pay all tax and regulatory obligations in a timely manner, in accordance with their ordinary business practices, and as authorized by the Order approving this Motion.

33. The Debtors have made or will make arrangements to readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Prepetition Tax Obligations. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and the Court should authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

34. Prompt payment of Sales and Use Taxes will permit the Debtors to avoid interest and penalties.

15

## Satisfaction of Bankruptcy Rule 6003

35. The Debtors believe that they are entitled to immediate authorization for the relief contemplated by this Motion. Pursuant to Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001." To the extent that the requirements of Bankruptcy Rule 6003 are applicable to the relief requested in the Motion, the Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm. Specifically, if the Prepetition Tax Obligations are not paid, the Debtors will be at risk for the business disruptions that would result from, among other things, (i) any liability of the directors and officers for failures to remit the "trust fund" Taxes, (ii) the administrative disruption of unnecessary local audits, and (iii) any operational disruptions or challenges to the Debtors' right to operate within certain jurisdictions where the Prepetition Tax Obligations were not paid. Addressing any potential subsequent action taken by those Taxing Authorities or those parties who ordinarily collect the Prepetition Tax Obligations would be costly, would place an administrative burden on management, and divert management's attention from the reorganization process. Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rule 6003.

DOCS_LA:321285.8

### Waiver of Bankruptcy Rule 6004

36.     The Debtors seek a waiver of any stay of the effectiveness of the Order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth in the Motion, the payments proposed herein are essential to prevent immediate and irreparable harm to the Debtors' business operations. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

### Notice

37.     Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) Key Bank National Association and Zions Bank, (c) parties asserting liens against the Debtors' assets, and (d) the Debtors' thirty largest unsecured creditors on a consolidated basis. As the Motion is seeking "first day" relief, within two business days after the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Del. Bankr. LR 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

38.     No prior request for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtors request entry of an interim and final order, pursuant to sections 105(a), 507(a)(8), and 541(d) of the Bankruptcy Code, substantially in the form attached hereto, (i) authorizing the Debtors to pay up to the Prepetition Tax Obligations Cap, as they deem necessary in their sole discretion; (ii) authorizing financial institutions to receive, process, honor, and pay all checks issued, and electronic payment requests made, related to the foregoing; and (iii) granting such other and further relief as is just and proper.

Dated: *April 30*, 2019

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Jeremy V. Richards (CA Bar No. 102300)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038)
919 N. Market Street, 17th Floor
Wilmington, DE 91899
Tel: (302) 652-4100
Fax: (302) 652-4400
E-mail: jrichards@pszjlaw.com
joneill@pszjlaw.com
jlucas@pszjlaw.com

Proposed Attorneys for Debtors and Debtors in Possession

DOCS_LA:321285.8