IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KONA GRILL, INC., et al.,[1] | ) | Case No.: 19-10953 (___) |
| | ) | Joint Administration Requested |
| Debtors. | ) | |
| | ) | |

**MOTION OF THE DEBTORS FOR INTERIM AND FINAL ORDERS UNDER SECTIONS 105, 361, 362, 63, 364, 1107 AND 1108 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 6003 (A) AUTHORIZING THE DEBTORS TO (I) MAINTAIN AND RENEW EXISTING INSURANCE POLICIES; (II) CONTINUE INSURANCE PREMIUM FINANCING PROGRAMS, (III) PAY INSURANCE PREMIUM FINANCING OBLIGATIONS ARISING THEREUNDER, AND (B) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR ALL OBLIGATIONS RELATED THERETO**

The above-captioned debtors and debtors in possession (the "Debtors") in these chapter 11 cases, hereby move this Court (the "Motion") for entry of an interim and final order (the "Order"), substantially in the form attached hereto as **Exhibit D**, pursuant to sections 105, 361, 362, 363, 364, 1107 and 1108 of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (i) authorizing the Debtors to (a) maintain and renew existing insurance policies and pay all policy premiums and brokers' fees arising thereunder or in connection therewith, (b) continue insurance premium financing programs,

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers include: Kona Grill, Inc. (6690); Kona Restaurant Holdings, Inc. (6703); Kona Sushi, Inc. (4253); Kona Macadamia, Inc. (2438); Kona Texas Restaurants, Inc. (4089); Kona Grill International Holdings, Inc. (1841); Kona Baltimore, Inc. (9163); Kona Grill International, Inc. (7911); and Kona Grill Puerto Rico, Inc. (7641). The headquarters and service address for the above-captioned Debtors is 15059 North Scottsdale Road, Suite 300, Scottsdale, Arizona 85254.

and (c) pay insurance premium obligations arising thereunder or in connection therewith; and (ii) authorizing financial institutions to honor all obligations related thereto.

### Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105, 361, 362, 363, 364, 1107 and 1108 of the Bankruptcy Code and Bankruptcy Rule 6003.

### Background

4. On the date hereof (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Concurrently herewith, the Debtors have filed a motion with this Court requesting joint administration of the Debtors' chapter 11 cases (the "Cases") for procedural purposes only. The Debtors are operating

their business and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or an examiner in these cases, and no official committee has yet been appointed by the Office of the United States Trustee.

5. The factual background regarding the Debtors, including their current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of Christopher J. Wells in Support of First Day Pleadings* (the "First Day Declaration") filed concurrently herewith and fully incorporated herein by reference.[2]

**A.     Insurance Policies**

6. In the ordinary course of the Debtors' business, the Debtors maintain numerous insurance policies providing coverage for, inter alia, commercial general liability, liquor liability, umbrella liability, property, worker's compensation, and fiduciary liability (collectively, the "Policies"). A list of the Policies is annexed hereto as **Exhibit A**. These Policies are essential to the preservation of the Debtors' business, and assets, and, in many instances, such insurance coverage is required by regulation, law, or contract that governs the Debtors' business.

(i)     Direct-Pay Policies

7. The Debtors pay the premiums for certain of its insurance policies (the "Direct-Pay Policies") directly to the carriers as follows:

8. The Debtors make monthly installment payments directly to Liberty Mutual Group ("Liberty Mutual"), the carrier of the Debtors' property, general and liquor liability,

---

[2] Capitalized term used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

3

umbrella, worker's compensation, and auto coverage. The Debtors are paying their annual premium to Liberty Mutual through its agent Lockton Companies, LLC ("Lockton"), in the form of a down payment, which was scheduled to be paid in April 2019 and has been paid as of the Petition date. A schedule of premium installments is annexed hereto as **Exhibit B**. The balance of the premium is scheduled to be paid over eight monthly installments, from May 2019 through December 2019. The Debtors are seeking authority to pay the remaining installments as and when they come due.[3]

9. In addition, the Debtors' annual premiums for property insurance in Puerto Rico, issued by Universal Group, Inc. ("Universal") for coverage year April 2019 through March 2020 was paid.

(ii)    The Financed Policies

10. The Debtors obtain an employment practices and fiduciary liability policy from Chubb ("Chubb"), a primary directors and officers liability policy from Beazley Group ("Beazley"), and an excess directors and officers policy from Argo Group US Inc. ("Argo" and together with Chubb and Beazley, the "Financed Insurance Providers" and, together with Liberty Mutual, Universal, Sompo and RLI, the "Insurance Providers"). The premiums owed to the Financed Insurance Providers are financed through the third-party insurance premium finance agreement discussed below.

11. The Policies are essential to the Debtors' business, and the Debtors believe it is in the best interests of their estates to permit the Debtors to honor their obligations under their

---

[3] This amount excludes the premium associated with Workers' Compensation, which is addressed in the wage/benefit motion filed contemporaneously herewith.

current insurance contracts (including related annual risk management fees to Lockton of $80,000 per year). Any other alternative would likely require considerable additional cash expenditures and would be detrimental to the Debtors' efforts to preserve and maximize the value of their estates.

**B.      Premium Financing Agreement**

12.     The Debtors currently have a prepetition Insurance Premium Finance Agreement (the "PFA") with an insurance financier, IPFS Corporation (the "Insurance Financier") in order to finance the cost of the insurance premiums for the employment practices and fiduciary liability, primary and excess directors and officers policies (the "Financed Policies") as discussed in paragraph 10 above. In the PFA, the Debtors, among other things, grant the Insurance Financier security interests in the Financed Policies and the Debtors' unearned premiums, return premiums, dividend payments and loss payments which reduce unearned premiums under the Financed Policies and appoints the Insurance Financier "attorney in fact" with respect to the Financed Policies. A copy of the PFA is attached hereto as **Exhibit C**.

13.     Pursuant to the PFA, the Insurance Financier agreed to pay each Financed Insurance Provider the entire premium on the respective Financed Policies. In return, the Debtors paid the Insurance Financier a down payment and ten (10) monthly installments with respect to the Financed Policies. The interest rate as set forth in the PFA is 7.990% per annum. The aggregate monthly installment amount paid on account of the PFA is $14,612 per month, which includes applicable broker's fees. The Financed Policies provide coverage through October 1, 2019. The final payment under the PFA comes due on October 1, 2019. As of the Petition Date,

DOCS_LA:321258.7 50045/001

the obligations under the PFA are current and the Debtors are seeking authorization to continue paying premiums in the ordinary course as and when they come due and grant a lien, as set forth in the PFA, against (a) all money that is or may be due insured because of a loss under any such policy that reduces the unearned premiums (subject to the interest of any applicable mortgagee or loss payee), (b) any unearned premium under each such policy, (c) dividends which may become due insured in connection with any such policy and (d) interests arising under a state guarantee fund.

C.   **Liquor License Tax Bonds**

14.   The Debtors are required to obtain a bond in favor of the City of Huntsville, Alabama and the Tennessee Department of Revenue for the privilege of selling alcohol. The bond secures the Debtors' obligations under the applicable liquor license. While the Debtors intend to fully comply with their obligations under their liquor licenses, they seek authorization to permit the above-described taxing authorities to enforce their rights under the applicable bond so that the Debtors may continue selling alcohol in the jurisdictions.

### Relief Requested

15.   The Policies are essential to the Debtors' business and the Debtors believe that it is in the best interests of the estates to continue to pay the amounts due under the Policies and the PFA regardless of whether a given payment became due prior to or after the Petition Date. Furthermore, the Debtors submit that payment of amounts that come due under the existing PFA is within the ordinary course of business. Unless the Debtors are authorized to continue to pay pursuant to the Policies and PFA on a monthly basis, Liberty Mutual and the Insurance Financier,

as applicable, will have the right to cancel the Policies and the Insurance Financier will be entitled to recover the unearned premiums from its collateral. The termination of the Policies would leave the Debtors' estates at risk of catastrophic loss if an unforeseen event occurred. To avoid this risk, the Debtors would need to obtain new insurance policies and pay for the policies, which they may not be able to obtain at favorable prices, or be required to pay the policies in full, which would in turn reduce the estates' assets available to pay creditors.

16. The Debtors also seek authority to continue and renew all of the Policies throughout the duration of these chapter 11 cases. The Debtors submit that the continuation, renewal or negotiation of these Policies and PFA falls squarely within the ordinary course of their business. Out of an abundance of caution, the Debtors request that the Court authorize them to renew the Policies and PFA as they expire in the ordinary course of business, including entering into a new PFA with the Insurance Financier or other similar premium insurance financing companies as and when the existing PFA expires post-petition, and to continue making monthly payments on account of any Policy for which the Debtors make monthly premium payments.

17. Finally, the Debtors request that all applicable banks and other financial institutions be authorized to receive, process, honor and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related to the Policies, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date. The Debtors submit that they will have sufficient cash to promptly pay all obligations, to the extent described herein, on an ongoing basis and in the ordinary course of business.

## Basis For Relief Requested

**A.     Payment of Premium Financing Obligations and Installment Payments is Necessary in Order to Comply with United States Trustee Requirements**

18.     The Debtors believe that the ordinary course maintenance of their Policies and insurance financing programs, including payment of all monthly obligations owed to Liberty Mutual and under the PFA, without further order of the Court, is necessary and essential to the Debtors' operation of their business during these chapter 11 cases, especially where, as here, the Debtors' failure to pay their monthly obligations could have severe negative consequences for their estates and creditors.

19.     Liberty Mutual may cancel the Direct-Pay Policies for nonpayment. Similarly, under the terms of the PFA, the Insurance Financier may cancel the Financed Policies for nonpayment and may accelerate and declare due and payable the entire unpaid premiums upon the Debtors' failure to pay the monthly obligation. Because the Debtors are required to maintain insurance coverage during these chapter 11 cases, a cancellation of the Policies would have material consequences to the Debtors' business and the chapter 11 process. *See* U.S. Trustee's Operating Guidelines at 3 (requiring maintenance of appropriate insurance coverage). Even if the Insurance Financier did not immediately cancel the insurance coverage upon the Debtors' default, the Debtors' failure to pay monthly obligations would result in a depletion of any unearned premium on the Financed Policies, thereby reducing the Insurance Financier's equity cushion. *See, e.g., In re Universal Motor Express, Inc.*, 72 B.R. 208, 210 (Bankr. W.D.N.C. 1987); *Schwinn Plan Comm. v. Transamerica Ins. Fin. Corp.*, 200 B.R. 980, 989 (Bankr. N.D. Ill. 1996).

B.  **Payment of Premium Financing Obligations is
    Warranted Under Bankruptcy Code Sections 361, 362 and 363**

20.  Security interests created by premium finance arrangements generally are recognized as secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements. *See In re JII Liquidating Corp.*, 344 B.R. 875 (Bankr. N.D. Ill 2006); *In re Big Squaw Mountain Corp.*, 122 B.R. 831 (Bankr. D. Maine 1990); *TIFCO, Inc. v. U.S. Repeating Arms Co.*, 67 B.R. 990, 994-95 (Bankr. D. Conn. 1986); *Drabkin v. A.I Credit Corp.*, 9 B.R. 159, 164-66 (Bankr. D.D.C. 1981). As secured creditors, the Insurance Financier may be entitled to seek relief from the automatic stay, either to cancel the Debtors' insurance policies or to seek adequate protection of their investments. *See Universal Motor Express*, 72 B.R. at 211 (recognizing that a default under the financing arrangement and the resulting decline in value of the unearned premiums justified relief from the automatic stay).

21.  As a secured creditor, the Insurance Financier may also be entitled to adequate protection of the value of its security, pursuant to section 361 of the Bankruptcy Code, to protect it against the diminution in the value of its collateral. Adequate protection may take many forms, including relief from the automatic stay, authority to apply unearned premiums to the outstanding debt, or continuing to make payments pursuant to the PFA. *See TIFCO*, 67 B.R. at 999. Moreover, pursuant to the PFA, the Insurance Financier maintains a security interest in the Debtors' unearned premiums, and therefore the Insurance Financier may be entitled to adequate protection of its interests in the unearned premiums under section 363(e) of the Bankruptcy Code. The Debtors' failure to provide such adequate protection -- for example by failing to pay the ongoing installments due under the PFA -- may constitute cause under section 362(d) of the

9

Bankruptcy Code for the Insurance Financier to obtain relief from the automatic stay and seek to terminate the underlying Financed Policies.

22. Even if the Debtors were successful in preventing the Insurance Financier from lifting the automatic stay to pursue its remedies, such litigation likely would be contested and thus very costly to the estates. More importantly, if unsuccessful in the automatic stay litigation, the Debtors may be unable to find a carrier willing to provide similar insurance coverage or a company willing to finance the premiums without charging significantly higher premiums and fees.

**C.   Continuation or Renewal of the Policies in the Ordinary Course of Business is Warranted Under Bankruptcy Code Sections 363(b) and (c)**

23. Under section 363(b) of the Bankruptcy Code, a debtor in possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" 11 U.S.C. § 363(b)(1). Section 363(c) of the Bankruptcy Code authorizes a debtor in possession to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and…use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Payment of amounts due under the Direct-Pay Policies and the PFA and the continuation or renewal of existing Policies falls squarely within the ordinary course of the Debtors' business.

24. Further, even if the continuation and/or renewal of the Policies was not considered to be ordinary course, under applicable case law, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on

DOCS_LA:321258.7 50045/001

the part of the debtor, such use should be approved. *See, e.g., Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *Stephens Indus. Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtors to show that a sound business purpose justifies such actions."); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b) of the Bankruptcy Code).

25. Moreover, pursuant to section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The basic purpose of section 105(a) is "to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." 2 COLLIER ON BANKRUPTCY, § 105.01 (15th ed. rev. 2008). Essentially, section 105(a) codifies the bankruptcy court's equitable powers.

26. The Policies provide the Debtors with essential insurance coverage. Any lapse in the coverage to be provided under the Policies could expose the Debtors to substantial liability, monetary and otherwise, for injuries, damages and penalties for failing to maintain proper insurance.

27. Therefore, in light of the importance of the Policies, the Debtors should be permitted to exercise their reasonable business judgment to continue and/or renew the Policies as they expire.

D. **Absent the Relief Requested the Debtors
Will Suffer Immediate and Irreparable Harm**

28.  Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001.

*See also In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549-50 (Bankr. S.D. Fla. 2008) (holding that Rule 6003 permits entry of orders on an interim basis to avoid irreparable harm).

29.  No court within the Third Circuit has interpreted the "immediate and irreparable harm" language in the context of Bankruptcy Rule 6003 in any reported decision. However, the Third Circuit Court of Appeals has interpreted the same language in the context of preliminary injunctions. In that context, irreparable harm has been interpreted as a continuing harm that cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed. Appx. 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). Further, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g., Acierno v. New Castle County*, 40 F.3d 645, 653-55 (3d Cir. 1994). To the extent that the requirements of Bankruptcy Rule 6003 are applicable to the relief requested in the Motion, the Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm as defined by the Third Circuit Court of Appeals.

30. The Debtors believe that immediate and irreparable harm will result absent the relief sought herein. Specifically, the payments owing to Liberty Mutual and the Insurance Financier may be outstanding or soon come due. The Debtors believe that if such obligations are not paid in a timely manner and on an expedited basis, Liberty Mutual or the Insurance Financier, as applicable, may seek to terminate the Policies. Specifically, the effect of potential cancellation of Policies – or even litigation regarding the same – would be devastating to the Debtors' estates, particularly at the early stages of these chapter 11 cases. Moreover, cancellation of the Policies would render the Debtors in violation of both the United States Trustee Operating Guidelines and various state laws, while putting at risk the financing the Debtors need for their businesses.

31. This Court has approved relief similar to that requested herein. *See, e.g., In re Golfsmith Int'l Holdings, Inc.*, No. 16-12033 (CSS) (Docket No. 261) (Bankr. D. Del. Oct. 13, 2016); *In re Sports Authority Holdings, Inc.*, 16-10527 (MFW) (Docket No. 132) (Bankr. D. Del. Apr. 3, 2016); *In re Fresh & Easy, LLC*, No. 15-12220 (BLS) (Docket No. 55) (Bankr. D. Del. Nov. 5, 2015); *In re Radioshack Corp.*, No. 15-10197 (BLS) (Docket No. 163) (Bankr. D. Del. Feb. 9, 2015).

## **Waiver of Bankruptcy Rules 6003 and 6004**

32. Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure, "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 21 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ." Fed. R. Bankr. P. 6003(b). For the reasons described herein and as supported by the First Day Declaration, the Debtors submit that the requirements of

Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates. To implement the foregoing successfully, the Debtors seek a waiver of the requirements under Bankruptcy Rule 6004, including the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

33.   Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rule 6003 and 6004(h).

34.   To the extent that the Policies, the PFA or related agreements may be deemed executory contracts within the meaning of section 365 of the Bankruptcy Code, the Debtors do not at this time seek authority to assume such contracts.

### Notice

35.   Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) Key Bank National Association and Zions Bank, (c) parties asserting liens against the Debtors' assets, and (d) the Debtors' thirty largest unsecured creditors on a consolidated basis. As the Motion is seeking "first day" relief, within two business days after the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Del. Bankr. LR 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

36. Notice of this Motion shall be given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee; (b) Key National Bank Association and Zions Bank, (c) parties asserting liens against the Debtors' assets, and (d) the Debtors' thirty largest unsecured creditors on a consolidated basis. As the Motion is seeking "first day" relief, within two business days after the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Del. Bankr. LR 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request entry of an interim and final order (i) granting the relief requested herein and (ii) granting the Debtors such other and further relief as the Court deems just and proper.

Dated: April 30, 2019

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*

Jeremy V. Richards (CA Bar No. 102300)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038)
919 N. Market Street, 17th Floor
Wilmington, DE 91899
Tel: (302) 652-4100
Fax: (302) 652-4400
E-mail: jrichards@pszjlaw.com
        joneill@pszjlaw.com
        jlucas@pszjlaw.com

Proposed Attorneys for Debtors and Debtors in Possession

15

DOCS_LA:321258.7 50045/001