# EXHIBIT C

## Premium Finance Agreement

| | | | | |
|---|---|---|---|---|
| 301 WEST 11TH ST., 4TH FLOOR<br>PO BOX 419090<br>KANSAS CITY, MO 64141-6090<br>(800)255-6316 FAX: (816)942-0475<br>CUSTOMER SERVICE: (866)412-2561 | | **PREMIUM FINANCE AGREEMENT** | | **IPFS CORPORATION** |
| **A** | **CASH PRICE**<br>(TOTAL PREMIUMS) | $171,662.00 | **AGENT**<br>(Name & Place of business)<br>LOCKTON COMPANIES, LLC | **INSURED**<br>(Name & Residence or business)<br>KONA GRILL, INC. |
| **B** | **CASH DOWN PAYMENT** | $17,166.20 | 444 W 47TH ST STE 900 | 15059 N SCOTTSDALE RD STE 300 |
| **C** | **PRINCIPAL BALANCE**<br>(A MINUS B) | $154,495.80 | KANSAS CITY, MO 64112-1906<br>(816)960-9000 FAX: (816)960-9099 | SCOTTSDALE, AZ 85254-2489 |

Commercial

Account #: _____   **LOAN DISCLOSURE**   Quote Number: 7968099
Additional Policies Scheduled on Page 3

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total Of Payments<br>The amount you will have paid after you have made all payments as scheduled |
|---|---|---|---|
| 7.990% | $6,240.38 | $154,495.80 | $160,736.18 |

| YOUR PAYMENT SCHEDULE WILL BE | | | |
|---|---|---|---|
| Number Of Payments | Amount Of Payments | When Payments Are Due | |
| 11 | $14,612.38 | Beginning: | MONTHLY<br>11/01/2018 |

YOU HAVE THE RIGHT TO RECEIVE AN ITEMIZATION OF THE AMOUNT FINANCED:
[ ] I WANT AN ITEMIZATION (DO NOT CHECK IF YOU DO NOT WANT AN ITEMIZATION)

**Security:** Refer to paragraph 1 below for a description of the collateral assigned to Lender to secure this loan.
**Late Charges:** A late charge will be imposed on any installment in default 5 days or more. This late charge will be 5.00% of the installment due.
**Prepayment:** If you pay your account off early, you may be entitled to a refund of a portion of the finance charge computed by the actuarial method on a 360 day basis or as otherwise allowed by law. The finance charge includes a predetermined interest rate plus a non-refundable service/origination fee of $10.00. See the terms below and on the next page for additional information about nonpayment, default and penalties.

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | SCHEDULE OF POLICIES<br>INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | MINIMUM EARNED PERCENT | POL TERM | PREMIUM |
|---|---|---|---|---|---|---|
| 8224-2458 | 10/01/2018 | FEDERAL INSURANCE CO<br>LOCKTON COMPANIES | PACKAGE | 0.000% | 12 | 40,987.00 |
| | | | | Broker Fee: | | $0.00 |
| | | | | TOTAL: | | $171,662.00 |

The undersigned Insured directs IPFS Corporation (herein, "Lender") to pay the premiums on the policies described on the Schedule of Policies. In consideration of such premium payments, subject to the provisions set forth herein, the Insured agrees to pay Lender at the branch office address shown above, or as otherwise directed by Lender, the amount stated as Total of Payments in accordance with the Payment Schedule, in each case as shown in the above Loan Disclosure. The named insured(s), on a joint and several basis if more than one, hereby agree to the following provisions set forth on pages 1 and 2 of this Agreement: 1. **SECURITY:** To secure payment of all amounts due under this Agreement, Insured assigns Lender a security interest in all right, title and interest to the scheduled policies, including (but only to the extent permitted by applicable law): (a) all money that is or may be due Insured because of a loss under any such policy that reduces the unearned premiums (subject to the interest of any applicable mortgagee or loss payee), (b) any unearned premium under each such policy, (c) dividends which may become due Insured in connection with any such policy and (d) interests arising under a state guarantee fund. 2. **POWER OF ATTORNEY:** Insured irrevocably appoints its Lender attorney-in-fact with full power of substitution and full authority upon default to cancel all policies above identified, receive all sums assigned to Lender or in which it has granted Lender a security interest and to execute and deliver on behalf of the Insured documents, instruments, forms and notices relating to the listed insurance policies in furtherance of this Agreement. 3. **POLICY EFFECTIVE DATES:** The finance charge begins to accrue as of the earliest policy effective date and will be computed by the actuarial method on a 360 day basis.

NOTICE: A. Do not sign this agreement before you read it or if it contains any blank space. B. You are entitled to a completely filled in copy of this agreement. C. Under the law, you have the right to pay in advance the full amount due and under certain conditions to obtain a partial refund of the finance charge. D. Keep your copy of this agreement to protect your legal rights. E. THE BORROWER(S) MAY REQUEST THAT TRUTH IN LENDING DISCLOSURES BE PROVIDED IN THE SPANISH LANGUAGE BEFORE SIGNING ANY LOAN DOCUMENTS (LOS PRESTATARIOS PODRIAN SOLICITAR UNA COPIA EN ESPANOL LAS DECLARACIONES SOBRE LA HONESTIDAD EN LOS PRESTAMOS ANTES DE FIRMAR CUALQUIER DOCUMENTO DE PRESTAMOS).

The undersigned hereby warrants and agrees to Agent's Representations set forth herein.

_Christi Hmg_    10/16/18            _[signature]_    10/16/18
Signature of Insured or Authorized Agent   DATE      Signature of Agent   DATE

Insured and Lender further agree that: **4. AGREEMENT EFFECTIVE DATE:** This Agreement shall be effective when written acceptance is mailed to the Insured by Lender. **5. DEFAULT AND DELINQUENT PAYMENTS:** If any of the following happens Insured will be in default: (a) a payment is not made when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against insured, or (c) insured fails to keep any promise the Insured makes in this Agreement; provided, however, that, to the extent required by applicable law, insured may be held to be in default only upon the occurrence of an event described in clause (a) above. The acceptance by Lender of one or more late payments from the Insured shall not estop Lender or be a waiver of the rights of Lender to exercise all of its rights hereunder or under applicable law in the event of any subsequent late payment. **6. CANCELLATION:** Lender may cancel the scheduled policies after providing at least 10 days notice of its intent to cancel or any other required statutory notice if the Insured does not pay any installment according to the terms of this Agreement or transfers any of the scheduled policies to a third party and the unpaid balance due to Lender shall be immediately due and payable by the Insured. Lender at its option may enforce payment of this debt without recourse to the security given to Lender. **7. CANCELLATION CHARGES:** If Lender cancels any insurance policy in accordance with the terms of this Agreement and applicable law, then the Insured shall pay Lender a cancellation charge equal to $15.00 or the maximum amount permitted by law. If cancellation occurs, the insured agrees to pay a finance charge on the outstanding indebtedness at the maximum rate authorized by applicable state law in effect on the date of cancellation until the outstanding indebtedness is paid in full or until such other date as required by law. **8. INSUFFICIENT FUNDS (NSF) CHARGES:** If Insured's check or electronic funding is dishonored for any reason, the Insured will pay to Lender a fee of $10.00 or the maximum amount permitted by law. **9. MONEY RECEIVED AFTER CANCELLATION:** Any payments made to Lender after Lender's Notice of Cancellation of the insurance policy(ies) has been mailed may be credited to the Insured's account without any obligation on the part of Lender to request reinstatement of any policy. Any money Lender receives from an insurance company shall be credited to the balance due Lender with any surplus refunded to whomever is entitled to the money. In the event that Lender does request a reinstatement of the policy(ies) on behalf of the Insured, such a request does not guarantee that coverage under the policy(ies) will be reinstated or continued. Only the insurance company has authority to reinstate the policy(ies). The Insured agrees that Lender has no liability to the Insured if the policy(ies) is not reinstated and Lender may charge a reinstatement fee where permitted up to the maximum amount allowed by law. **10. ASSIGNMENT:** The insured agrees not to assign this Agreement or any policy listed hereon or any interest therein (except for the interest of mortgagees or loss payees), without the written consent of Lender, and that Lender may sell, transfer and assign its rights hereunder or under any policy without the consent of the insured, and that all agreements made by the insured hereunder and all rights and benefits conferred upon Lender shall inure to the benefit of Lender's successors and assigns (and any assignees thereof). **11. INSURANCE AGENT OR BROKER:** The insured agrees that the insurance agent or broker soliciting the policies or through whom the policies were issued is not the agent of Lender; and the agent or broker named on the front of this Agreement is neither authorized by Lender to receive installment payments under this Agreement nor to make representations, orally or in writing, to the insured on Lender's behalf (except to the extent expressly required by applicable law). As and where permissible by law, Lender may compensate your agent/broker for assisting in arranging the financing of your insurance premiums. If you have any questions about this compensation you should contact your agent/broker. **12. FINANCING NOT A CONDITION:** The law does not require a person to enter into a premium finance agreement as a condition of the purchase of insurance. **13. COLLECTION COSTS:** Insured agrees to pay attorney fees and other collection costs to Lender to the extent permitted by law if this Agreement is referred to an attorney or collection agency who is not a salaried employee of Lender, to collect any money Insured owes under this Agreement. **14. LIMITATION OF LIABILITY:** The insured agrees that Lender's liability to the insured, any other person or entity for breach of any of the terms of this Agreement for the wrongful or improper exercise of any of its powers under this Agreement shall be limited to the amount of the principal balance outstanding, except in the event of Lender' gross negligence or willful misconduct. Insured recognizes and agrees that Lender is a lender only and not an insurance company and that in no event does Lender assume any liability as an insurer hereunder or otherwise. **15. CLASSIFICATION AND FORMATION OF AGREEMENT:** This Agreement is and will be a general intangible and not an instrument (as those terms are used in the Uniform Commercial Code) for all purposes. Any electronic signature or electronic record may be used in the formation of this Agreement, and the signatures of the insured and agent and the record of this Agreement may be in electronic form (as those terms are used in the Uniform Electronic Transactions Act). A photocopy, a facsimile or other paper or electronic record of this Agreement shall have the same legal effect as a manually signed copy. **16. REPRESENTATIONS AND WARRANTIES:** The Insured represents that (a) the insured is not insolvent or presently the subject of any insolvency proceeding (or if the insured is a debtor of bankruptcy, the bankruptcy court has authorized this transaction), (b) if the insured is not an individual, that the signatory is authorized to sign this Agreement on behalf of the insured, (c) all parties responsible for payment of the premium are named and have signed this Agreement, and (d) there is no term or provision in any of the scheduled policies that would require Lender to notify or get the consent of any third party to effect cancellation of any such policy. **17. ADDITIONAL PREMIUM FINANCING:** Insured authorizes Lender to make additional advances under this premium finance agreement at the request of either the Insured or the Insured's agent with the Insured's express authorization, and subject to the approval of Lender, for any additional premium on any policy listed in the Schedule of Policies due to changes in the insurable risk. If Lender consents to the request for an additional advance, Lender will send Insured a revised payment amount ("Revised Payment Amount"). Insured agrees to pay the Revised Payment Amount, which may include additional finance charges on the newly advanced amount, and acknowledges that Lender will maintain its security interest in the Policy with full authority to cancel all policies and receive all unearned premium if Insured fails to pay the Revised Payment Amount. **18. PRIVACY:** Our privacy policy may be found at https://www.ipfs.com/Privacy.aspx. **19. ENTIRE DOCUMENT / GOVERNING LAW:** This document is the entire Agreement between Lender and the Insured and can only be changed in writing and signed by both parties except that the Insured authorizes Lender to insert or correct on this Agreement, if omitted or incorrect, the insurer's name and the policy number(s). Lender is also authorized to correct patent errors and omissions in this Agreement. In the event that any provision of this Agreement is found to be illegal or unenforceable, it shall be deemed severed from the remaining provisions, which shall remain in full force and effect. The laws of the State of Arizona will govern this Agreement. **20. AUTHORIZATION:** The insurance company(ies) and their agents, any intermediaries and the agent / broker named in this Agreement and their successors and assigns are hereby authorized and directed by insured to provide Lender with full and complete information regarding all financed insurance policy(ies), including without limitation the status and calculation of unearned premiums, and Lender is authorized and directed to provide such parties with full and complete information and documentation regarding the financing of such insurance policy(ies), including a copy of this Agreement and any related notices. **21. WAIVER OF SOVEREIGN IMMUNITY:** The Insured expressly waives any sovereign immunity available to the insured, and agrees to be subject to the laws as set forth in this Agreement (and the jurisdiction of federal and/or state courts) for all matters relating to the collection and enforcement of amounts owed under this Agreement and the security interest in the scheduled policies granted hereby.

## AGENT/BROKER REPRESENTATIONS

The agent/broker executing this, and any future, agreements represents, warrants and agrees: (1) installment payments totaling $0.00 and all applicable down payment(s) have been received from the Insured in immediately available funds, (2) the Insured has received a copy of this Agreement; if the agent/broker has signed this Agreement on the Insured's behalf, the Insured has expressly authorized the agent/broker to sign this Agreement on its behalf or, if the insured has signed, to the best of the undersigned's knowledge and belief such signature is genuine, (3) the policies are in full force and effect and the information in the Schedule of Policies including the premium amounts is correct, (4) no direct company bill, audit, or reporting form policies or policies subject to retrospective rating or to minimum earned premium are included, except as indicated, and the deposit of provisional premiums is not less than anticipated premiums to be earned for the full term of the policies, (5) the policies can be cancelled by the insured or Lender (or its successors and assigns) on 10 days notice and the unearned premiums will be computed on the standard short rate or pro rata table except as indicated, (6) there are no bankruptcy, receivership, or insolvency proceedings affecting the Insured, (7) to hold Lender, its successors and assigns harmless against any loss or expense (including attorney fees) resulting from these representations or from errors, omissions or inaccuracies of agent/broker in preparing this Agreement, (8) to pay the down payment and any funding amounts received from Lender under this Agreement to the insurance company or general agent (less any commissions where applicable), (9) to hold in trust for Lender or its assigns any payments made or credited to the insured through or to agent/broker directly or indirectly, actually or constructively by the insurance companies and to pay the monies, as well as the unearned commissions to Lender or its assigns upon demand to satisfy the outstanding indebtedness of the insured, (10) all material information concerning the insured and the financed policies necessary for Lender to cancel such policies and receive the unearned premium has been disclosed to Lender, (11) no term or provision of any financed policy requires Lender to notify or get the consent of any third party to effect cancellation of such policy, and (12) to promptly notify Lender in writing if any information on this Agreement becomes inaccurate.

AGENT
(Name & Place of business)
LOCKTON COMPANIES, LLC

444 W 47TH ST STE 900

KANSAS CITY, MO 64112-1906
(816)960-9000 FAX: (816)960-9099

INSURED
(Name & Residence or business)
KONA GRILL, INC.

15059 N SCOTTSDALE RD STE 300

SCOTTSDALE, AZ 85254-2489

Account #: _____     SCHEDULE OF POLICIES     Quote Number: 7968099
                                    (continued)

| POLICY PREFIX AND NUMBER | EFFECTIVE DATE OF POLICY | INSURANCE COMPANY AND GENERAL AGENT | COVERAGE | MINIMUM EARNED PERCENT | POL TERM | PREMIUM |
|---|---|---|---|---|---|---|
| MLX 4209453-0 | 10/01/2018 | ARGONAUT INSURANCE CO / LOCKTON COMPANIES | EXCESS D&O | 0.000% | 12 | 49,500.00 |
| V24B16180101 | 10/01/2018 | BEAZLEY INSURANCE CO INC. / LOCKTON COMPANIES | DIRECTORS & OFFICERS | 0.000% | 12 | 81,175.00 |
| | | | | Broker Fee: | | $0.00 |
| | | | | TOTAL: | | $171,662.00 |