## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| KONA GRILL, INC., *et al.*,[1] | ) Case No. 19-10953 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 364 AND RULES 2002, 4001, AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) AUTHORIZING INCURRENCE BY THE DEBTORS OF POSTPETITION SENIOR SECURED INDEBTEDNESS, (II) AUTHORIZING USE OF CASH COLLATERAL BY THE DEBTORS, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) SCHEDULING A FINAL HEARING**

Upon consideration of the motion (the "Motion") of Kona Grill, Inc. ("Kona Grill") and its affiliated debtors, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), pursuant to sections 105, 361, 362, 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 4001-2 and 9013-1(m) of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, among other things:

I.        authorization for Kona Grill (the "Borrower") to obtain postpetition financing (the "Financing") of up to $39,218,750.00 (the "DIP Facility" and the loans made thereunder, the "DIP Loans") on the terms and conditions set forth in this Interim Order and the Senior Secured Superpriority DIP Credit Agreement (substantially in the form attached to the Motion as

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers include:  Kona Grill, Inc. (6690); Kona Restaurant Holdings, Inc. (6703); Kona Sushi, Inc. (4253); Kona Macadamia, Inc. (2438); Kona Texas Restaurants, Inc. (4089); Kona Grill International Holdings, Inc. (1841); Kona Baltimore, Inc. (9163); Kona Grill International, Inc. (7911); and Kona Grill Puerto Rico, Inc. (7641).  The headquarters and service address for the above-captioned Debtors is 15059 North Scottsdale Road, Suite 300, Scottsdale, Arizona 85254.

Exhibit B, and as hereafter amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof, the "DIP Credit Agreement,"[2] together with all agreements, documents, certificates, and instruments delivered or executed from time to time in connection therewith, each as hereafter amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof and hereof, collectively, the "DIP Documents"), among the Debtors, KeyBank National Association, acting as the administrative and collateral agent (in such capacities, the "DIP Agent"), KeyBank National Association as a "new money" lender (in such capacity, the "DIP Lender"), and ZB, N.A., d/b/a Zions First National Bank, as a Roll Up Loan Lender (as defined in the DIP Credit Agreement), secured by the Collateral (as defined below), and authorization for each Debtor other than the Borrower to guarantee Borrower's obligations under the DIP Facility as a guarantor (collectively, with the Borrower, the "Credit Parties," as that term is defined in the DIP Credit Agreement) and for each Debtor to grant security interests in the Collateral;

II.      authorization to use the proceeds of the DIP Facility extended to the Borrower as expressly provided in the DIP Documents and consistent with the Budget (as defined below) (A) to pay certain costs, fees, and expenses related to the Cases as provided for in this Interim Order and the DIP Documents, (B) following entry of this Interim Order, for $2,500,000 in aggregate principal amount of Prepetition Indebtedness (as defined below) to be "rolled-up" into the DIP Obligations and to allow a "creeping roll up" of additional Prepetition Indebtedness outstanding under the Prepetition Credit Agreement pursuant to the procedures set forth below and, upon entry of the Final Order, to convert the entire outstanding amount balance of the

---

[2]    Capitalized terms used but not defined herein shall have the meanings given to them in the Motion or the DIP Credit Agreement, as applicable.

Prepetition Indebtedness into DIP Obligations, (C) to provide working capital and for other general corporate purposes of the Debtors, and (D) to pay administration costs, fees and expenses of these Cases and claims or amounts approved by the Bankruptcy Court;

**III.** authorization for the Debtors to execute and deliver the DIP Credit Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

**IV.** that the Court grant to the DIP Lender and the DIP Agent in respect of the DIP Loans, for the benefit of the DIP Agent, the DIP Lender and any other parties referred to in the DIP Credit Agreement with respect to the respective DIP Obligations (as defined below), in accordance with the relative priorities as set forth more fully below, and subject and subordinate to the Carve Out (as defined below), the following:

    **a.** pursuant to Bankruptcy Code section 364(c)(1), joint and several superpriority allowed administrative expense claim status in the Cases;

    **b.** pursuant to Bankruptcy Code section 364(c)(2), a first priority lien on all assets of the Debtors, including all property of their respective estates in the Cases, whether real or personal, tangible or intangible, now owned or hereafter acquired and all proceeds, profits, rents, accessions, and substitutes thereof, that is not subject to (i) valid, perfected, and non-avoidable liens in existence as of the Petition Date or (ii) valid liens in existence as of the Petition Date that are perfected thereafter to the extent permitted by Bankruptcy Code section 546(b);

    **c.** pursuant to Bankruptcy Code section 364(d), a first priority, senior priming lien on and security interest in all of the Debtors' assets, including all property of their respective estates in the Cases, whether real or personal, tangible or intangible,

now owned or hereafter acquired, and all proceeds, profits, rents, accessions, and substitutions thereof, that is subject to (y) valid, perfected and non-avoidable liens in existence as of the Petition Date or (z) valid liens in existence as of the Petition Date that are perfected thereafter to the extent permitted by Bankruptcy Code section 546(b), *provided, however*, the priming lien shall prime only the liens granted pursuant to the Prepetition Credit Agreement (defined below) and shall be subject to (i) Permitted Liens, and (ii) the Carve Out (each as defined in the DIP Documents or herein);

V.    authorization for the DIP Agent to terminate the DIP Credit Agreement and to terminate the Debtors' use of Cash Collateral (defined below) upon the occurrence and continuance of an Event of Default (as defined in the DIP Credit Agreement) on terms specified herein and in the DIP Credit Agreement;

VI.    subject to entry of the Final Order, authorization to grant liens to the DIP Lender on the proceeds of the Debtors' claims and causes of action arising under Bankruptcy Code sections 544, 545, 547, 548, 549 and 550 (collectively, the "Avoidance Actions");

VII.    authorization for the Debtors to use, among other things, in accordance with the Budget, any cash collateral (as that term is defined in Bankruptcy Code section 363(a) and described below, the "Cash Collateral") in which the Prepetition Secured Parties (as defined below) may have an interest and the granting of adequate protection to the Prepetition Secured Parties with respect to any diminution in value of their interests in the Prepetition Collateral (as defined below) arising from, inter alia, the Debtors' use of the Prepetition Collateral (including Cash Collateral), the imposition of the automatic stay of Bankruptcy Code section 362, and the priming of the liens of the Prepetition Secured Parties by the DIP Facility;

**VIII.**    subject to, and only effective upon, the entry of a Final Order granting such relief, the waiver by the Debtors of any right to surcharge against the Collateral pursuant to Bankruptcy Code section 506(c) or otherwise;

**IX.**    the Court's modification of the automatic stay imposed by Bankruptcy Code section 362 to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order;

**X.**    the Court's waiver of any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order;

**XI.**    authorization that during the period (the "Interim Period") commencing on the date of this Court's entry of this Interim Order and ending on the earlier of (a) the date this Court enters the Final Order and (b) the occurrence of the Maturity Date, a portion of the Commitments shall be borrowed by Borrower, subject to compliance with the terms, conditions, and covenants contained in the DIP Documents, in an amount equal to $2,500,000; and

**XII.**    the scheduling of a final hearing (the "Final Hearing") to consider entry of the Final Order granting the relief requested in the Motion on a final basis and authorizing the balance of the borrowings under the DIP Documents on a final basis, as set forth in the Motion and the DIP Documents filed with this Court and approving the Debtors' notice with respect to the Motion.

The hearing on the Motion (the "Interim Hearing") having been held by this Court on May 2, 2019, pursuant to Bankruptcy Rules 2002, 4001(b)(2) and 4001(c)(2); and based upon all of the pleadings filed with this Court, the evidence presented at the Interim Hearing and the entire record herein; and this Court having heard and resolved or overruled any objections to the interim relief requested in the Motion; and the Court having noted the appearances of all parties

in interest; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and the Debtors having provided notice of the Motion as set forth in the Motion, and it appearing that no other or further notice of the Motion need be given; and after due deliberation and consideration, and sufficient cause appearing therefor:

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. **Jurisdiction.** This Court has jurisdiction over these Cases, this Motion, the parties, and the Debtors' property pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D). Venue of the Cases and the Motion is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are Bankruptcy Code sections 105, 361, 362, 363, 364, and 507 and Bankruptcy Rules 2002, 4001, 6004, and 9014 and Local Rules 2002-1, 4001-2 and 9013-1(m).

2. **Notice.** The notice given by the Debtors of the Motion and the Interim Hearing was the best available under the circumstances. Such notice constitutes due and sufficient notice of the Debtors' request for the interim relief granted herein and of the Interim Hearing under the circumstances and complies with Bankruptcy Rules 4001(b) and (c) and Local Rules 2002-1, 4001-2 and 9013-1(m), such that no other or further notice is necessary or required.

3. **Debtors' Stipulations.** Subject to the limitations thereon contained in paragraph 16 below, the Debtors admit, stipulate and agree that:

a. **The Prepetition Credit Agreement**

i. The Borrower, Kona Grill, Inc. ("Holdings"), and KeyBank National Association (the "Prepetition Agent"), as administrative agent for the lenders party thereto, including KeyBank National Association (the "Prepetition Lenders"), are parties to that certain Second Amended and Restated Credit Agreement, dated as of October 12, 2016 (as

6

amended, restated, supplemented or otherwise modified from time to time) the "Prepetition Credit Agreement"), pursuant to which the Prepetition Lenders made loans (the "Prepetition Loans") available to the Borrower.

      **ii.** The Prepetition Loans were guaranteed by each of the remaining Debtors, as guarantors (together, with the Borrower, the "Prepetition Credit Parties").

      **iii.** As of the Petition Date, the outstanding aggregate principal amount of the Prepetition Loans (including accrued interest which may be paid in kind) was approximately $33,218,750, together with all other outstanding obligations, including all other interest, fees and expenses, the "Prepetition Indebtedness").

    **b.  The Prepetition Collateral.**

      **i.** To secure the Prepetition Indebtedness, the Prepetition Credit Parties and Prepetition Agent, as collateral agent (in such capacity, the "Prepetition Collateral Agent") entered into that certain Amended and Restated Pledge and Security Agreement, dated as of October 12, 2016 (as amended, and together with any ancillary collateral documents, the "Prepetition Collateral Agreement"),[3] pursuant to which the Prepetition Credit Parties granted to the Prepetition Collateral Agent, for the benefit of the Prepetition Collateral Agent and the holders of Prepetition Indebtedness (collectively, the "Prepetition Secured Parties"), valid, binding, perfected, security interests in and liens on substantially all of the Prepetition Credit Parties' property and assets, excluding the Excluded Property, but otherwise including, without limitation, (a) all accounts, including, without limitation, each and every Account Receivable; (b) all goods; (c) all Inventory, (d) all equipment; (e) all documents; (f) all instruments; (g) all chattel paper; (h) all money; (i) all securities accounts, together with all financial assets credited

---

[3] Capitalized terms used but not defined in this paragraph shall have the meanings given to them in the Prepetition Collateral Agreement.

therein from time to time, and all financial assets, monies, securities, cash and other property held therein or credited thereto; (j) all investment property; (k) all fixtures; (l) all as-extracted collateral, including, without limitation, all minerals; (m) all general intangibles, including, but not limited to, all Contract Rights; (n) all commercial tort claims, (o) all Intellectual Property; (p) all letters of credit and letter-of-credit rights; (p) all payment intangibles; (q) all Pledged Collateral; (r) all Permits; (s) all promissory notes; (t) all supporting obligations; (u) all other items, kinds and types of personal property, tangible or intangible, of whatever nature, and regardless of whether the creation or perfection or effect of perfection or non-perfection of a security interest therein is governed by the UCC of any particular jurisdiction or by any other applicable treaty, convention, statute, law or regulation of any applicable jurisdiction; (v) all additions, modifications, alterations, improvements, upgrades, accessions, components, parts, appurtenances, substitutions and/or replacements of, to or for any of the foregoing; and (w) all Proceeds and products of any and all of the foregoing (collectively, the "Prepetition Collateral").

   **c.** The Prepetition Indebtedness constitutes the legal, valid and binding obligations of the Prepetition Credit Parties, enforceable against them in accordance with their respective terms (other than in respect of the stay of enforcement arising from Bankruptcy Code section 362), and no portion of the Prepetition Indebtedness is subject to avoidance, recharacterization, reduction, set off, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, impairment, recovery, subordination or any other challenges pursuant to the Bankruptcy Code or applicable nonbankruptcy law or regulation by any person or entity. The Debtors are jointly and severally liable to the Prepetition Lenders on account of the Prepetition Loans.

**d.** The liens on the Prepetition Collateral securing the Prepetition Indebtedness (the "Prepetition Liens") constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement arising from Bankruptcy Code section 362) and perfected security interests and liens on the Prepetition Collateral, were granted to, or for the benefit of, the Prepetition Secured Parties, as applicable, for fair consideration and reasonably equivalent value and are not subject to defense, counterclaim, recharacterization, subordination or avoidance pursuant to the Bankruptcy Code or applicable nonbankruptcy law or regulation by any person or entity.

4.    **Findings Regarding the Financing and Use of Cash Collateral.**

**a.**    Good cause has been shown for the entry of this Interim Order.

**b.**    The Debtors have an immediate and critical need to obtain the Financing and to use Cash Collateral as well as other Collateral to continue the operation of their businesses. Without such funds, the Debtors will not be able to meet their payroll obligations or to pay operating and other expenses during this critical period. The ability of the Debtors to finance their operations through the incurrence of new indebtedness is vital to the preservation and maintenance of the going concern value of the Debtors' estates and necessary to avoid immediate and irreparable harm to the estates.

**c.**    The Debtors are unable to obtain sufficient financing on more favorable terms from sources other than the DIP Lender under the DIP Documents and are unable to obtain adequate unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors are also unable to obtain secured credit allowable solely under Bankruptcy Code sections 364(c)(1), 364(c)(2), and 364(c)(3).

**d.**     The DIP Agent and the DIP Lender are willing to provide the Financing, and the Prepetition Secured Parties are willing to consent to the use of their Cash Collateral, subject to the terms and conditions set forth in the DIP Documents and the provisions of this Interim Order, as applicable, including the roll up and conversion of the Prepetition Loans into the DIP Loans, and *provided* that the DIP Liens (as defined below), the Superpriority Claims and other protections granted by this Interim Order and the DIP Documents will not be affected by any subsequent reversal or modification of this Interim Order or any other order, as provided in Bankruptcy Code section 364(e), which is applicable to the Financing and the Cash Collateral use approved by this Interim Order.  The DIP Agent and the DIP Lender have acted in good faith in agreeing to provide the Financing approved by this Interim Order and to be further evidenced by the DIP Documents, and the Prepetition Secured Parties have acted in good faith in consenting to the Debtors' use of their Cash Collateral pursuant to the terms of this Interim Order, and their reliance on the assurances referred to above is in good faith.

**e.**     The conversion, or roll up, of the Prepetition Loans into the DIP Loans is compensation for, in consideration for, and solely on account of, the agreement of the DIP Lender to fund amounts under the DIP Credit Agreement, and not as payments under, adequate protection for, or otherwise on account of the Prepetition Loans. The roll up of the Prepetition Loans into DIP Obligations is subject to the reservation of rights in paragraph 16 of this Interim Order and will not prejudice the rights of any party in interest.

**f.**     Among other things, entry of this Interim Order will minimize disruption of the Debtors' businesses and operations by enabling them to meet payroll and other critical expenses, including vendor and estate professional fees.  The Financing and the use of Cash Collateral as set forth herein are vital to avoid immediate and irreparable loss or harm to the

Debtors' estates, which will otherwise occur if immediate access to the Financing and to the use of Cash Collateral is not obtained.  Consummation of the Financing and the use of Cash Collateral pursuant to the terms of this Interim Order therefore are in the best interests of the Debtors' estates.

g.    The DIP Documents and the Financing contemplated thereunder, and the use of Cash Collateral, each as authorized hereunder, have been negotiated in good faith and at arm's length among the Debtors, the DIP Agent and the DIP Lender, and the Prepetition Secured Parties, respectively, among others, and the terms of the Financing and the use of Cash Collateral, respectively, are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.  All of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the Financing and the DIP Documents, including the Obligations (as defined in the DIP Credit Agreement, collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Agent and the DIP Lender and their affiliates in good faith, as that term is used in Bankruptcy Code section 364(e), and in express reliance upon the protections offered by Bankruptcy Code section 364(e) in the event that this Interim Order is reversed or modified on appeal.

h.    The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2(b).    The authorization granted herein on an interim basis to use Cash Collateral and to enter into the DIP Documents and to borrow up to an aggregate principal amount of $2,500,000 in the Interim Period is necessary to avoid immediate and irreparable harm to the Debtors and their estates. This Court concludes that entry of this Interim Order is in the best interests of the Debtors and

their estates and creditors as its implementation will, among other things, allow the Debtors to facilitate their chapter 11 goals and maximize the value of their assets.

        **i.**     To the extent necessary, the Prepetition Secured Parties have consented to the Financing and the Debtors' use of the Prepetition Collateral, including Cash Collateral. This Court concludes that the adequate protection provided to the Prepetition Secured Parties hereunder for, among other things, the Debtors' incurrence of the DIP Obligations on a priming basis, as described herein, and the Debtors' use of Prepetition Collateral, including Cash Collateral, is consistent with and authorized by Bankruptcy Code sections 361, 362, 363, and 364.

       **5.**    **Authorization of the Financing and the DIP Documents.**

        **a.**     The Debtors are hereby authorized and directed to execute, issue, deliver, enter into, and adopt, as the case may be, the DIP Credit Agreement and the other DIP Documents to be delivered pursuant hereto or thereto or in connection herewith or therewith.

        **b.**     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts, to make, execute, and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, control agreements, and financing statements), and, without further application to the Court, to promptly pay all fees referred to in this Interim Order, the DIP Credit Agreement and DIP Documents, including, without limitation, all reasonable fees and expenses paid, payable or incurred prior to the date hereof and/or the Petition Date and the reasonable fees and expenses of the professionals of the DIP Agent and the DIP Lender, Buchanan Ingersoll & Rooney, PC and Morris Anderson (the "DIP Lender's Professional Fees and Expenses"). After entry of this Interim Order, the Debtors shall pay the DIP Lender's Professional Fees and

Expenses within ten (10) Business Days (if no written objection is received within such ten (10) Business Days' period) after such Professional has delivered an invoice, with a copy of such invoice delivered simultaneously to the United States Trustee for the District of Delaware (the "U.S. Trustee"), and counsel to the official committee of unsecured creditors if appointed (the "Committee"). Written objections to payment of the DIP Lender's Professional Fees and Expenses, which may only be asserted by the Debtors, the U.S. Trustee and the Committee (if appointed), must contain a specific basis for the objection and quantification of the undisputed amount of the fees and expenses invoiced. None of the DIP Lender's Professional Fees and Expenses shall be subject to Court approval or required to be maintained in accordance with the U.S. Trustee Guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; *provided, however,* if an objection to a Professional's invoice is timely received, the Debtors shall only be required to pay the undisputed amount of the invoice and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute.

        **c.**    Subject to the provisions contained in paragraph 19 hereof, the Debtors are further hereby authorized to execute, deliver, and perform one or more amendments or modifications to the DIP Documents for, among other things, the purpose of adding additional financial institutions as DIP Lender and reallocating the commitments for the Financing among the DIP Lender (but without in any manner limiting or altering the obligations of the DIP Lender to the Debtors under this Interim Order or the DIP Documents, or the rights of the Debtors hereunder or thereunder), in each case in such form as the Debtors and the Required Lenders may agree (it being understood that no further approval of this Court shall be required for non-

material amendments to the DIP Credit Agreement or modifications of the Budget pursuant to the terms of paragraph 9 hereof).

        **d.**    Subject to the provisions of paragraph 16 below, upon entry of this Interim Order, the amount of $2,500,000 of the aggregate principal amount of Prepetition Loans shall be immediately rolled-up and converted into DIP Obligations and become a Roll Up Loan under the DIP Credit Agreement.  From and after entry of this Interim Order, the Prepetition Loans shall be rolled up into DIP Obligations on a creeping basis.  Each Wednesday, the Debtors shall report to the Agent and its counsel the amount of actual cash disbursements made the immediately preceding week, and Roll Up Loans shall be issued on a dollar for dollar basis based on such cash disbursements.  Following entry of the Final Order, the entire remaining outstanding balance of the Prepetition Loans shall be rolled up and converted into Roll Up Loans under the DIP Facility.

        **e.**    Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with their terms subject to the terms of this Interim Order.

        **f.**    The Interim Term Loan and the Delayed Draw Term Loans (both as defined in the DIP Credit Agreement) shall have priority over the Roll Up Loans (as defined in the DIP Credit Agreement), including with respect to (x) the Liens and Superpriority Claims granted hereunder, and (y) as set forth in the DIP Credit Agreement, with respect to application of proceeds.

        **6.**    **Superpriority Claims.**

a.    Pursuant to Bankruptcy Code section 364(c)(1), all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Provisions (defined below)) and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in Bankruptcy Code sections 503(b) and 507(b), and over any and all administrative expenses or other claims arising under Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 726, 1113 or 1114 (the "Superpriority Claims"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and their estates and all proceeds thereof, subject to only to the Carve Out; *provided, however*, that the Superpriority Claims shall apply with respect to the proceeds of Avoidance Actions only upon entry of the Final Order.

b.    **Carve Out.** As used in this Interim Order, the "Carve Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee

Professionals" and, together with the Debtor Professionals, the "Professional Persons") incurred prior to the receipt of a Carve Out Trigger Notice (defined below) to the extent such fees and expenses of the Professional Persons are (a) within the amounts set forth in the Budget approved by the DIP Lender, (b) subsequently allowed by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code or other Court order (excluding "ordinary course professionals"), and (c) not otherwise paid from the Collateral or from retainers or any professional expense escrow account established by the Debtors; and (iv) Allowed Professional Fees incurred from and after delivery of a Carve Out Trigger Notice or the occurrence of the Cash Collateral Termination Date in an amount not to exceed $200,000.00 (the "Post-Carve Out Trigger Notice Cap"). For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Agent to the Debtors, their counsel, the U.S. Trustee, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

      **c.**    **No Direct Obligation To Pay Allowed Professional Fees.** None of the DIP Agent or DIP Lender shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agent or the DIP Lender, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

      **7.**    **DIP Liens.**

      **a.**    As security for the DIP Obligations, effective and perfected automatically upon the date of this Interim Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, or the possession or control by the DIP Agent of any Collateral (as defined below), the following security interests and liens (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lender, pursuant to this Interim Order and the DIP Documents, the "DIP Liens") are hereby granted to the DIP Agent, for its own benefit and the benefit of the DIP Lender (subject and subordinate to the Carve Out and Permitted Liens): all tangible and intangible prepetition and postpetition property and interests in property of the Debtors, whether existing on or as of the Petition Date or thereafter acquired, including, without limitation, (i) all accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, intellectual property, instruments, insurance, inventory, investment property, letter-of-credit rights, money and any supporting obligations related thereto; (ii) all commercial tort claims; (iii) all books and records pertaining to the Collateral; (iv) all property of any Credit Party held by the DIP Agent, the DIP Lender, or any Prepetition Secured Party, including all property of every description, in the custody of or in transit to the DIP Agent, the DIP Lender or any Prepetition Secured Party for any purpose, including safekeeping, collection or pledge, for the account of such Credit Party or as to which such Credit Party may have any right or power, including, but not limited to cash; (v) all other goods (including, but not limited to fixtures) and personal property of the Credit Parties, whether tangible or intangible and wherever located; (vi) all owned or leased real estate and real property leaseholds (*provided, however*, that with respect to the Debtors' leases of non-residential real property, the DIP Liens shall attach only to proceeds of such leases); and (vii) all

proceeds of the foregoing (the "Postpetition Collateral"), plus all Prepetition Collateral (collectively, the "Collateral"). Subject to and effective only upon entry of the Final Order, the Postpetition Collateral shall include the proceeds or property recovered, unencumbered or otherwise the subject of successful Avoidance Actions, whether by judgment, settlement or otherwise.

> **b.**    The DIP Liens shall be senior priming liens on the Prepetition Collateral senior to all Prepetition Liens thereon and any Adequate Protection Liens (as defined below) thereon, but subject to (i) the Carve Out, and (ii) Permitted Liens that are valid, binding, perfected and unavoidable as of the Petition Date (other than the Prepetition Liens) and which are entitled to priority over the Prepetition Liens (iii) valid, perfected and non-avoidable liens in existence as of the Petition Date or which are entitled to priority over the Prepetition Liens, and (iv) valid liens in existence as of the Petition Date that are perfected thereafter to the extent permitted by Bankruptcy Code section 546(b) which are entitled to priority over the Prepetition Liens.

### 8.    Remedies.

> **a.**    The automatic stay provisions of Bankruptcy Code section 362 are vacated and modified to the extent necessary to permit the DIP Agent and DIP Lender to exercise, upon not less than three (3) Business Days' prior written notice (which can be by electronic mail or fax) to counsel to (i) the Debtors, the (ii) Committee and (iii) the Office of the US Trustee following the occurrence and continuance of an Event of Default (as defined in the DIP Credit Agreement), all rights and remedies hereunder and under the DIP Documents against the Debtors and/or the Collateral (including, without limitation, the right to set off monies of the Debtors in accounts maintained or controlled by the DIP Agent or any DIP Lender); *provided,*

*however*, that the DIP Agent may only enter onto any leased premises of any Debtor after an Event of Default in accordance with (i) a separate written agreement by and between the DIP Agent and any applicable landlords, (ii) any landlord waiver or similar agreement existing as of the Petition Date, (iii) applicable non-bankruptcy law, or (iv) a further order of this Court after notice and a hearing.

    **b.**  In the absence of a further order of this Court, and notwithstanding anything herein or in the DIP Documents to the contrary, the Debtors' rights to use Cash Collateral pursuant to this Interim Order shall terminate upon the earlier to occur of (i) three (3) Business Days' written notice (that can be given by electronic mail or fax) provided by the DIP Agent to the Debtors (and their counsel) or provided by the Debtors to the DIP Agent of the occurrence and continuance of any Event of Default under the DIP Facility or (ii) repayment by the Debtors of all Obligations under the DIP Facility indefeasibly in full in cash (the "Cash Collateral Termination Date"). Notwithstanding the foregoing, the Debtors' rights to use Cash Collateral shall immediately terminate (without notice from the DIP Agent) at the time that any Debtor has actual knowledge of an Event of Default if the Debtors fail to promptly notify the DIP Agent of such Event of Default.

    **9.**  **Approved Budget and Access to Debtors.**

    **a.**  For purposes of this Interim Order, the term "Budget" means the budget, attached hereto as **Exhibit 1**, the "Initial Budget," as such Initial Budget shall be amended, supplemented, and/or extended in the manner set forth herein and in the DIP Documents.

    **b.**  On the first Wednesday of the week after the Interim DIP Order Entry Date, the Debtors shall deliver to the DIP Agent a variance report (the "First Variance Report").

The First Variance Report shall measure performance against the first week of the Budget and show actuals and variances for cash receipts and disbursements made the preceding week, including a calculation whether the Borrower is in compliance with the Permitted Variance (as defined in the DIP Credit Agreement).

        **c.**    On the second Wednesday of the week after the Interim DIP Order Entry Date, the Debtors shall deliver to the DIP Agent a second variance report (the "Second Variance Report").  The Second Variance Report shall measure performance against the first and second weeks of the Budget and show actuals and variances for cash receipts and disbursements made the preceding week, including a calculation whether the Borrower is in compliance with the Permitted Variance.

        **d.**    On the third Wednesday of the week after the Interim DIP Order Entry Date, the Debtors shall deliver to the DIP Agent a third variance report (the "Third Variance Report").  The Third Variance Report shall measure performance against the first, second and third weeks of the Budget and show actuals and variances for cash receipts and disbursements made the preceding week and including calculation whether the Borrower is in compliance with the Permitted Variance in the aggregate for the prior three weeks.

        **e.**    On the fourth Wednesday of the week after the Interim DIP Order Entry Date, the Debtors shall deliver to the DIP Agent a fourth variance report (the "Fourth Variance Report").  The Fourth Variance Report shall measure performance against the first, second, third and fourth weeks of the Budget and show actuals and variances for cash receipts and disbursements made the preceding week (excluding fees paid to professionals) and including calculation whether the Borrower is in compliance with the Permitted Variance in the aggregate for the prior four weeks.

  f. Thereafter, on each successive Wednesday, the Debtors shall deliver to the DIP Agent a variance report (the "Rolling Variance Report"). The Rolling Variance Report shall demonstrate that total disbursements (and, for the avoidance of doubt, not cash receipts) for the four-week rolling period do not exceed the Permitted Variance.

  g. The Debtors shall be available, and cause their restructuring professionals, financial consultants and investment bankers to be available, for calls and meetings with the DIP Lender (and its advisors) at its reasonable request, and in any event no less frequently than weekly, at which such meetings the Debtors and its professionals shall provide regular updates to the DIP Lender with respect to the Credit Parties and their business and assets, including the Milestones (it being understood that the financial consultants and investor bankers shall not be required to disclose the identity of the potential buyers of the Company's assets or other confidential information).

  10. **Limitation on Charging Expenses Against Collateral.** Subject to and effective only upon entry of the Final Order, except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including a case under chapter 7 of the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to Bankruptcy Code section 506(c), the enhancement of collateral provisions of Bankruptcy Code section 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) or any similar principle of law, without the prior written consent of the DIP Lender, and no consent shall be implied from any action, inaction or acquiescence by the DIP Agent, the DIP Lender or the Prepetition Secured Parties. Subject to and effective only upon entry of the Final Order, in no event shall the DIP Agent, the DIP Lender, or the Prepetition Secured Parties be subject to (i) the "equities of the case" exception contained in Bankruptcy

Code section 552(b) or (ii) the equitable doctrine of "marshaling" or any other similar doctrine with respect to the Collateral.

11.     **Cash Collateral.** Subject to the terms of this Interim Order and the Budget, the Debtors are hereby authorized to use all "cash collateral" within the meaning of Bankruptcy Code section 363(a) in which the Prepetition Collateral Agent or any other Prepetition Secured Party has a perfected security interest as of the Petition Date or at any time thereafter, including any cash on deposit in any deposit account or other account over which the Prepetition Collateral Agent has control, and including any cash proceeds of Collateral (collectively, the "Cash Collateral").

12.     **Prepetition Secured Parties' Adequate Protection.**  Pending the full roll up of the Prepetition Loans, the Prepetition Secured Parties are entitled, pursuant to Bankruptcy Code sections 361, 363(e) and 364(d)(1), to adequate protection of their respective interests in the Prepetition Collateral, including Cash Collateral, for any diminution in the value of their respective interests in the Prepetition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other actual consumption) of Cash Collateral and any other Prepetition Collateral, the priming liens on the Prepetition Collateral granted to the DIP Agent and the DIP Lender pursuant to the DIP Documents and this Interim Order, and the imposition of the automatic stay pursuant to Bankruptcy Code section 362, and in each case to the extent required by the Bankruptcy Code (each, a "Diminution Claim").  As adequate protection for such Diminution Claims, the Prepetition Collateral Agent is granted, for the benefit of the respective Prepetition Secured Parties, *nunc pro tunc* to the Petition Date, the following adequate protection (collectively, the "Adequate Protection Provisions"):

a. **Retention of Liens.** The Prepetition Secured Parties will, subject to the terms of this Interim Order and the Final Order, maintain the Prepetition Liens on the Collateral, which liens shall be junior and subordinate to (i) the DIP Liens, (ii) the Carve Out (iii) valid, perfected and non-avoidable liens in existence as of the Petition Date which are entitled to priority over the Prepetition Liens, and (iv) valid liens in existence as of the Petition Date that are perfected thereafter to the extent permitted by Bankruptcy Code section 546(b) which are entitled to priority over the Prepetition Liens.

b. **Adequate Protection Liens.** The Prepetition Collateral Agent, for itself and for the benefit of the Prepetition Secured Parties, is hereby granted valid and perfected replacement security interests in and liens on the Postpetition Collateral which liens shall be junior and subordinate to (i) the DIP Liens, (ii) the Carve Out (iii) valid, perfected and non-avoidable liens in existence as of the Petition Date which are entitled to priority over the Prepetition Liens, and (iv) valid liens in existence as of the Petition Date that are perfected thereafter to the extent permitted by Bankruptcy Code section 546(b) which are entitled to priority over the Prepetition Liens (the "Adequate Protection Liens").

c. **Section 507(b) Claim.** To the extent that the Adequate Protection Liens and other forms of adequate protection granted pursuant to this Interim Order are insufficient as adequate protection for a Prepetition Secured Party's Diminution Claim, and pursuant to Bankruptcy Code section 507(b), such Prepetition Secured Party is hereby granted, subject and subordinate to the payment of the Carve Out and DIP Claims, a Superpriority Claim.

13. **Credit Bid.** Subject to entry of the Final Order, the DIP Lender and the Prepetition Secured Parties shall have the right to credit bid in connection with any proposed sale of the Collateral, subject to and in accordance with Bankruptcy Code section 363(k), up to the

full amount of the DIP Facility and the Prepetition Indebtedness. Each of the DIP Agent, on behalf of the DIP Lender, and the Prepetition Secured Parties shall be considered a "Qualified Bidder" with respect to its rights to acquire any or all assets by credit bid.

14.    **Perfection of DIP Liens.**

a.    The DIP Agent, on behalf of the DIP Lender, is hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Agent chooses to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination immediately upon entry of this Interim Order, but subject in all respects to the provisions of paragraph 16 of this Interim Order.

b.    A certified copy of this Interim Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

c.    The Debtors shall execute and deliver to the DIP Agent all such agreements, financing statements, instruments and other documents as the DIP Agent may reasonably request to evidence, confirm, validate or perfect the DIP Liens or the Adequate Protection Liens.

15.    **Preservation of Rights Granted Under the Order.**

**a.**    Except as expressly provided herein or in the DIP Credit Agreement, no claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order to the DIP Agent or the DIP Lender shall be granted or allowed while any portion of the DIP Obligations remains outstanding, and the DIP Liens shall not be subject to or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551 or subordinate to or made *pari passu* with any other lien or security interest, whether under Bankruptcy Code section 364(d) or otherwise.

**b.**    Unless all DIP Obligations shall have been indefeasibly paid in full in cash, the Debtors shall not seek, and it shall constitute an Event of Default under the DIP Credit Agreement if any of the Debtors seek, or if there is entered (i) any stay, vacatur, rescission, or modification of this Interim Order without the prior written consent of the DIP Agent (not to be unreasonably withheld), and no such consent shall be implied by any other action, inaction, or acquiescence by the DIP Agent, or (ii) an order converting the Cases to cases under chapter 7 of the Bankruptcy Code or dismissing any of the Cases.  If an order dismissing any of the Cases under Bankruptcy Code section 1112 or otherwise is at any time entered, such order shall provide (in accordance with Bankruptcy Code sections 105 and 349) that (x) the Superpriority Claims and other administrative claims granted under this Interim Order, the DIP Liens and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and all Diminution Claims shall have been paid and satisfied in full (and that such Superpriority Claims, the other administrative claims granted under this Interim Order, the DIP Liens and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest)

and (y) this Court shall retain jurisdiction notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in clause (x) above.

       **c.**    If any or all of the provisions of this Interim Order are hereafter reversed or modified on appeal, such reversal or modification shall not affect the validity of the DIP Loans or the priority of the DIP Liens or Adequate Protection Liens, unless a stay pending appeal has been obtained. The DIP Agent, the DIP Lender, and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in Bankruptcy Code section 364(e).

       **d.**    Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Provisions and all other rights and remedies of the DIP Agent, the DIP Lender or the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired, or discharged by the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code or dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization or liquidation in any of the Cases. The terms and provisions of this Interim Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the DIP Obligations, the Superpriority Claims and all other administrative claims granted pursuant to this Interim Order and all other rights and remedies of the DIP Agent, the DIP Lender and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall continue in full force and effect until all DIP Obligations, all Diminution Claims are indefeasibly paid in full in cash.

16.    **Effect of Stipulations On Third Parties.**  The stipulations and admissions contained in paragraph 3 of this Interim Order shall be binding on all parties in interest, including, without limitation, the Debtors and the Committee, unless an adversary proceeding or other appropriate contested matter has been commenced against the Prepetition Secured Parties in connection with any matter related to the Prepetition Indebtedness Documents or the Prepetition Collateral (any such claim, a "Challenge"), (i) if by the Committee by no later than sixty (60) days from the date of formation of such Committee, and (ii) if by another party in interest, by no later than seventy-five (75) days from the date of entry of this Interim Order, subject to further extension by written agreement of the Debtors, DIP Agent, and the Prepetition Secured Creditors (the "Challenge Period" and the date of expiration of the Challenge Period being the "Challenge Period Termination Date").  If no such Challenge is timely filed, then (x) Prepetition Indebtedness shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance for all purposes in the Cases and any subsequent chapter 7 case, (y) the Prepetition Collateral Agent's liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 3 hereof, not subject to defense, counterclaim, recharacterization, subordination or avoidance, and (z) the Obligations under the Prepetition Indebtedness Documents and the liens of the Collateral Agent on the Prepetition Collateral shall not be subject to any other or further challenge by the Debtors, any committee or any other party in interest, each of whom shall be enjoined from seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors with respect thereto).  If any such adversary proceeding or contested matter is

timely filed, the stipulations and admissions contained in paragraph 3 of this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Debtors, any committee and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged in such timely filed adversary proceeding or contested matter. Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, claims and defenses with respect to the Prepetition Indebtedness Documents or the liens of the Prepetition Collateral Agent on the Prepetition Collateral. For the avoidance of doubt, any trustee appointed or elected in these Chapter 11 Cases shall, until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Interim Order.

17.    **Limitation on Use of Financing Proceeds and Collateral.** Notwithstanding anything herein or in any other order by this Court to the contrary, without the prior written consent, as applicable, of the DIP Agent or the Prepetition Collateral Agent, none of the DIP Obligations, the Cash Collateral, Collateral, or the Carve Out may be used for the following purposes: (i) to challenge or investigate the validity, perfection, priority, extent or enforceability of the DIP Credit Agreement or the Prepetition Indebtedness Documents or the liens or security interest securing the obligations under any of the foregoing or to pursue any causes of action of

any kind against the DIP Agent or the DIP Lender (except that, if a Committee is appointed, up to $25,000 of Cash Collateral may be used by such Committee for purposes of such investigation); or (ii) to object to, contest, delay, prevent or interfere with in any way the exercise of rights and remedies by the DIP Agent.

18. **Milestones under the DIP Credit Agreement.** Pursuant to the DIP Credit Agreement, failure of the Credit Parties to perform each action with respect to the Cases as set forth below within the time periods set forth below (the "Milestones") shall constitute an Event of Default (as defined in the DIP Credit Agreement) and, subject to paragraph 8, result in the automatic termination of the Debtors' authority to use Cash Collateral under this Interim Order and permits the DIP Agent, on behalf of the DIP Lender, to exercise the rights and remedies provided for in this Interim Order and the DIP Documents:;

    a. On the Petition Date, the Credit Parties shall file a motion to reject certain leases effective as of the Petition Date ("Lease Rejection Motion");

    b. On or before May 7, 2019, the Bankruptcy Court shall have entered the Interim DIP Order;

    c. On or before May 13, 2019, the Credit Parties shall file a motion seeking approval of the Sale Process, including approval of a stalking horse bid acceptable to the Lenders;

    d. On or before May 30, 2019, the Bankruptcy Court shall have entered the Final DIP Order;

    e. On or before May 30, 2019, the Lease Rejection Motion shall have been approved by order of the Bankruptcy Court;

      **f.**      On or before May 30, 2019, the Bankruptcy Court shall have entered the Bidding Procedures Order, in form and substance acceptable to the Lenders;

      **g.**      On or before July 26, 2019, an auction (to the extent necessary) for the sale of all or substantially all of the Credit Parties' assets shall have occurred (the "Sale");

      **h.**      On or before July 30, 2019, the Bankruptcy Court shall have entered an order, in form and substance acceptable to the Lenders, approving the Sale;

      **i.**      On or before August 9, 2019, the Sale shall have closed.

If the Borrower fails to satisfy any Milestone it shall be an Event of Default under the DIP Credit Agreement, unless such Milestone is waived, modified, or extended by the DIP Agent in writing in its sole discretion.

      **19.**      **Modifications of DIP Documents.**  The Debtors, the DIP Agent and the DIP Lender are hereby authorized to implement, in accordance with the terms of the respective DIP Documents, any non-material modifications of the respective DIP Documents without further Order of this Court, or any other modifications to the respective DIP Documents; *provided, however*, that any material modification or amendment to the respective DIP Documents shall be subject to Court approval.   The Debtors shall provide notice to the U.S. Trustee and any Committee (if appointed) within five (5) business days following the execution of any non-material modifications to the DIP Documents.

      **20.**      **Interim Order Governs.**  In the event of any inconsistency between the provisions of this Interim Order and the DIP Documents, the provisions of this Interim Order shall govern.

      **21.**      **Binding Effect; Successors and Assigns.** The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in

these Cases, including, without limitation, the DIP Agent, the DIP Lender, the Prepetition Secured Parties, any Committee appointed in these Cases and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lender, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided, however*, that the DIP Agent and the DIP Lender shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan under the DIP Credit Agreement or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Agent and the DIP Lender shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. § 9601 *et seq.*, as amended, or any similar federal or state statute).

22.    **Effectiveness.**    This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof, and there shall be no stay of execution of effectiveness of this Interim Order.

23.    **Final Hearing.**    The Final Hearing is scheduled for May 28, 2019 at 11:00 a.m. p.m. (ET) before this Court.  The Debtors shall promptly mail copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed. Any party in interest objecting to the relief sought at the Final

Hearing shall serve and file written objections; which objections shall be served (with a copy to the Court's chambers) no later than May [21], 2019 at 4:00 p.m. (ET) upon: (a) the U.S. Trustee, 844 King Street, Suite 2007, Lockbox 35, Wilmington, DE 19801; (b) the Debtors, c/o 15059 North Scottsdale Road, Suite 300, Scottsdale, AZ 85254 (Attn: Christopher J. Wells, Chief Restructuring Officer); (c) counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 N. Market Street, 17th Floor, Wilmington, DE 19801 (Attn: Jeremy V. Richards, John W. Lucas, and James E. O'Neill); (d) Buchanan Ingersoll & Rooney, PC, 919 N. Market Street, Suite 990, Wilmington, DE 19801 (Attn: Mary F. Caloway); and (e) counsel to any official committee then appointed in these Cases.

Dated: May  2 , 2019
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE