**EXHIBIT 1**

**Bid Procedures**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KONA GRILL, INC., et al.,[1] | ) | Case No.: 19-10953 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## BID PROCEDURES FOR SALE OF
## SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS

The above-captioned debtors and debtors in possession (the "Debtors") filed a motion dated May 14, 2019 (the "Motion"),[2] seeking, among other things, approval of the process and procedures set forth below (the "Bid Procedures") through which they will determine the highest and best offer for the sale of substantially all of the business assets of the Debtors (the "Assets"). On May ___, 2019, the Bankruptcy Court entered its order (the "Bid Procedures Order"), which, among other things, approved the Bid Procedures.  Debtors will seek to enter into a Purchase Agreement with a stalking horse bidder (the "Stalking Horse Purchaser") for the sale of the Assets, subject to higher and better bids that may be submitted in accordance with these Bid Procedures.

On July 25, 2019, at 2:00 p.m. (Eastern time), as further described below and in the Bid Procedures Order, the Bankruptcy Court shall conduct the "Sale Hearing" at which the Debtors shall seek entry of the Sale Order authorizing and approving the sale of the Assets to the Stalking Horse Purchaser or to one or more other Qualified Bidders (defined below) that the Debtors, in their sole discretion (in consultation with the Committee and KeyBank), determine to have made the highest and best offer.

*Agreement*

Prospective bidders should submit a proposed asset purchase agreement (a "Competing Agreement"), similar in form and substance, as modified, to the asset purchase agreement attached to the Motion as Exhibit C (the "Purchase Agreement"). Subject to the approval of the Court, the highest or best bidder at the auction will purchase the Assets, and assume certain executory contracts and unexpired leases of the Debtors, free and clear of any Liens, Claims and Encumbrances, and other interests. The transaction contemplated is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to Bankruptcy Code §§ 363 and 365.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers include:  Kona Grill, Inc. (6690); Kona Restaurant Holdings, Inc. (6703); Kona Sushi, Inc. (4253); Kona Macadamia, Inc. (2438); Kona Texas Restaurants, Inc. (4089); Kona Grill International Holdings, Inc. (1841); Kona Baltimore, Inc. (9163); Kona Grill International, Inc. (7911); and Kona Grill Puerto Rico, Inc. (7641).  The headquarters and service address for the above-captioned Debtors is 15059 North Scottsdale Road, Suite 300, Scottsdale, Arizona 85254.

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion or Purchase Agreement, as applicable.

### Assets for Sale

The Debtors are offering for sale the Assets, which generally consist of the Debtors' right, title and interest in substantially all of the assets heretofore used exclusively in connection with or arising out of the operation of the Debtors' business as further set forth in section 1.1 of the Purchase Agreement and schedules thereto. Except as otherwise provided in the Purchase Agreement, all of the Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of any Liens, Claims and Encumbrances, and other interests (other than Permitted Liens, Claims and Encumbrances and other interests, and/or except as otherwise provided in the Competing Agreement) to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Liens, Claims and Encumbrances to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Liens, Claims and Encumbrances applied against the Assets.

### Participation Requirements

In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in all or portions of the Assets (a "<u>Potential Bidder</u>") must first deliver (unless previously delivered) to the Debtors and their counsel, not later than five (5) business days before the Bid Deadline (defined below), unless otherwise modified by the Debtors in their reasonable discretion:

a)     <u>Confidentiality Agreement</u>. An executed confidentiality agreement ("<u>Confidentiality Agreement</u>") in form and substance acceptable to the Debtors;

b)     <u>Identification of Potential Bidder</u>. Concurrently with its Bid, identification of the Potential Bidder, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;

c)     <u>Corporate Authority</u>. Concurrently with its Bid, written evidence satisfactory to Debtors of the Potential Bidder's chief executive officer or other appropriate senior executive's approval of the contemplated transaction;

d)     <u>Disclosure</u>. Written disclosure of any connections or agreements with the Debtors, the Stalking Horse Purchaser, any other known Potential Bidder or Qualified Bidder (as defined below), and/or any officer, director or direct or indirect equity security holder of the Debtors; and

e)     <u>Proof of Financial Ability to Perform</u>. Prior to or at the time of presentation of a Bid, written evidence that demonstrates the Potential Bidder has the necessary financial ability to close the contemplated transaction (the "<u>Financial Wherewithal Information</u>"). Such information should include, *inter alia*, the following:

     (1)     the Potential Bidder's current financial statements (audited if they exist);

     (2)     contact names and numbers for verification of financing sources;

     (3)     evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction;

2

(4)    any such other form of financial disclosure of credit-quality support information or enhancement acceptable to the Debtors demonstrating that such Potential Bidder has the ability to close the contemplated transaction.

f)    <u>Proof of Adequate Assurance of Future Performance</u>. Prior to or at the time of presentation of a Bid, written evidence that demonstrates adequate assurance of future performance under all contracts to be assumed in such contemplated transaction (the "<u>Adequate Assurance Information</u>"), which shall include but not necessarily limited to:  the specific name of the proposed bidder and the proposed name under which the assignee intends to operate the store; the potential assignee's intended use for the space; a contact person for the proposed assignee that lessor counterparties may directly contact in connection with the Adequate Assurance Information; and the Financial Wherewithal Information.

## Designation as Qualified Bidder

A "<u>Qualified Bidder</u>" is a Potential Bidder (or combination of Potential Bidders whose bids for the Assets of the Debtors do not overlap and who shall also be referred to herein as a single Qualified Bidder) that delivers the documents described above and otherwise satisfies the requirements of the Bid Procedures Order and the procedures set forth herein, and that the Debtors, in their discretion (in consultation with any Official Committee of Unsecured Creditors that may be appointed (the "<u>Committee</u>") and KeyBank National Association ("<u>KeyBank</u>")), determine is reasonably likely to submit a *bona fide* offer for the Assets and to be able to consummate a sale if selected as a Successful Bidder.

The Debtors, in their sole discretion and in consultation with the Committee and KeyBank, shall determine and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.

The Stalking Horse Purchaser and KeyBank are Qualified Bidders and deemed to satisfy all Bid requirements as set forth herein.

### Access to Due Diligence Materials

Only Potential Bidders that execute and deliver a confidentiality agreement reasonably satisfactory to the Debtors, are eligible to receive due diligence access or access to additional non-public information.  The Debtors shall not be required to provide confidential or proprietary information to a Potential Bidder if the Debtors reasonably believe that such disclosure would be detrimental to the interests of the Debtors.  If the Debtors determine that a Potential Bidder that has satisfied all requirements to become a Qualified Bidder and yet does not constitute a Qualified Bidder, then such Potential Bidder's right to receive due diligence access or access to additional non-public information shall terminate.  The Debtors will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders.  The Debtors shall not be obligated to furnish any due diligence information after the Bid Deadline (as hereinafter defined).  The Debtors are not responsible for, and will bear no liability with respect to, any information obtained by Qualified Bidders in connection with the sale of the Assets.

### Due Diligence From Bidders

Each Potential Bidder and Qualified Bidder (each, a "<u>Bidder</u>") (and, collectively, "<u>Bidders</u>") shall comply with all reasonable requests for additional information and due diligence

access by the Debtors or their advisors regarding such Bidder and its contemplated transaction. Failure by a Potential Bidder to comply with requests for additional information and due diligence access will be a basis for the Debtors to determine that the Potential Bidder is not a Qualified Bidder. Failure by a Qualified Bidder to comply with such requests for additional information and due diligence access will be a basis for the Debtors to determine that a bid made by a Qualified Bidder is not a Qualified Bid.

### Bidding Process

The Debtors and their advisors shall (in consultation with Committee and KeyBank): (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions hereof; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the Assets. The Debtors (in consultation with the Committee and KeyBank) shall have the right to adopt such other rules for the bidding process that are not inconsistent with the Bid Procedures Order that are reasonably expected to better promote the goals of such process.

### *Bid Deadline*

On or before the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver written and electronic copies of its Bid to the Debtors, 15059 North Scottsdale Road, Suite 300, Scottsdale, AZ, Attn: Christopher J. Wells, [email], with a copy to counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 N. Market St., 17th Floor, Wilmington, Delaware 19801, Attn: John W. Lucas and James E. O'Neill, not later than 4:00 p.m. (prevailing Eastern time) on July 18, 2019 (the "Bid Deadline"). The Debtors shall promptly provide copies of all Bids to the advisors for the Committee and KeyBank.

A Bid received after the Bid Deadline shall not constitute a Qualified Bid.

### *Bid Requirements*

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtors (in consultation with the Committee and KeyBank) to satisfy each of the following conditions), unless otherwise modified by the Debtors in their reasonable discretion:

1. Good Faith Deposit. Each Bid must be accompanied by a deposit (the "Good Faith Deposit") in the form of a certified check or cash payable to the order of Kona Grill, Inc. in an amount equal to 10% of the Bidder's offer.

2. Purchase Price. The consideration proposed by the Bid may include only cash and/or other consideration acceptable to the Debtors (in consultation with the Committee and KeyBank) (the cash component must be no less than an amount necessary to satisfy the Break-up Fee, as defined below). The Bid must clearly set forth the purchase price and identify any non-cash components including, without limitation, which liabilities of the Debtors the bidder is agreeing to assume (the "Purchase Price").

3. Irrevocable. The Bids of the Successful Bidder and the Back-up Bidder must be irrevocable until the closing of the transaction with the Successful Bidder (the "Termination Date").

4. Principal Terms. A Bid must include an executed agreement pursuant to which the Qualified Bidder proposes to effectuate the contemplated transaction (the "Contemplated Transaction Documents") and a black-lined copy of the Competing Agreement marked to

show all changes requested by the Qualified Bidder, including specification of the proposed Purchase Price and any changes to any exhibits or schedules to the Competing Agreement. The terms and conditions of the Contemplated Transaction Documents must be, in the aggregate, not materially more burdensome to the Debtors than the provisions contained in the Stalking Horse Purchaser's Purchase Agreement. A Bid must identify with particularity each and every condition to closing and all executory contracts and unexpired leases to be assumed and assigned pursuant to the Contemplated Transaction Documents. The Contemplated Transaction Documents must include a commitment to close by no later than the closing date set forth in section 3 of the Purchase Agreement. A Bid should propose a contemplated transaction involving all or substantially all of the Assets, provided, however, that the Debtors in their sole discretion (in consultation with the Committee and KeyBank) may consider proposals for less than substantially all the Assets if such proposals or combination of proposals maximizes the value of the Debtors' estates.

5.   Contingencies. A Bid may not be conditioned on obtaining financing or any internal approval or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects at the closing of specified representations and warranties at or before closing or the satisfaction in all material respects at the closing of specified conditions. A Bid must disclose any governmental approvals identified by the Qualified Bidder other than as set forth in the Competing Agreement that may impact the evaluation of such Bid.

6.   Authorization to Bid and Identity of Bidder. A Bid must include evidence of authorization and approval from such Qualified Bidder's board of directors (or comparable governing body, or a statement as to why such approval is unnecessary) with respect to the submission, execution, delivery and closing of the Contemplated Transaction Documents. A Bid must also fully disclose the identity of such entity that is submitting the Bid, including the identity of each equity holder or other financial backer of the bidder if such bidder is formed for the purpose of submitting the bid.

7.   Financing Sources. A Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the sale satisfactory to the Debtors (in consultation with the Committee and KeyBank) with appropriate contact information for such financing sources.

8.   Adequate Assurance Information: A Bid must contain the Adequate Assurance Information.

9.   No Fees Payable to Qualified Bidder. A Bid may not request or entitle the Qualified Bidder, other than the Stalking Horse Purchaser, to any Break-up fee, termination fee, expense reimbursement or similar type of payment. Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or the Bid Procedures.

10.   Immediate Payment of the Break-up Fee. A Bid must allow for the immediate payment of the Break-up Fee to the Stalking Horse Purchaser from the first proceeds of the cash portion of the Purchase Price of such Bid.

11.   Non-Reliance. A Bid must include an acknowledgement and representation of the Qualified Bidder that it has had an opportunity to conduct any and all due diligence regarding the Assets and Assumed Liabilities prior to making its Bid, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its Bid, and that it did not rely upon any written or oral statements, representations, warranties, or guaranties, express, implied, statutory or

5

otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, the Assumed Liabilities, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Contemplated Transaction Documents.

A Bid received from a Qualified Bidder before the Bid Deadline that meets the above requirements and that satisfies the Bid Deadline requirement above shall constitute a "Qualified Bid," if the Debtors believe, in their reasonable discretion (in consultation with the Committee and KeyBank), that such Bid would be consummated if selected as the Successful Bid. The Debtors shall have the right to reject any and all Bids that they believe, in their reasonable discretion (in consultation with the Committee and KeyBank), do not comply with the Bid Procedures. In the event that any Potential Bidder is determined by the Debtors not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit. The Debtors shall supply Adequate Assurance Information to lessor counterparties (or their counsel) within twenty-four hours after receipt by the Debtors and such party's designation as a Qualified Bidder. However, in the case of the Stalking Horse Purchaser, the Debtors shall deliver the Adequate Assurance Information on or before June 28, 2019.

### Break-up Fee

Recognizing the Stalking Horse Purchaser will expend time, energy and resources, and that the Stalking Horse Purchaser provides a floor bid with respect to the Assets that it offers to purchase, the Debtors are authorized (pursuant to the Bid Procedures Order) to provide the following bidding protections to the Stalking Horse Purchaser.

1.  Notwithstanding anything to the contrary in the Purchase Agreement, the Debtors have agreed to pay the Stalking Horse Purchaser, upon the terms set forth in Section 12 of the Purchase Agreement, the amount of Five Hundred Thousand and 00/100 Dollars as a Break-up fee (the "Break-up Fee") pursuant to and in accordance with the terms of the Purchase Agreement and Bid Procedures Order.

2.  Any Bid submitted on the Bid Deadline by a party or parties other than the Stalking Horse Purchaser must be in an amount that is sufficient to pay the Break-up Fee and result in additional consideration to the Debtors' estates in the amount of at least $100,000 (as compared to the Purchase Price offered by such Stalking Horse Purchaser), after payment of the Break-up Fee, plus the assumption of liabilities.

### Auction

If the Debtors receive at least two (2) Qualified Bids from Qualified Bidders (inclusive of the Stalking Horse Purchaser Bid) prior to the Bid Deadline, then the Debtors shall notify the Stalking Horse Purchaser and each other Qualified Bidder that the Debtors intend to conduct an auction (the "Auction") to consider all Qualified Bids and to determine the highest or otherwise best bid with respect to the Assets. By no later than noon (ET) on July 19, 2019, the Debtors shall provide the Stalking Horse Purchaser, all Qualified Bidders and the Committee and KeyBank with copies of all Qualified Bids in advance of the Auction, but may exclude any confidential financial information, as reasonably designated by the applicable Qualified Bidder. Unless otherwise designated by the Debtors, the Auction shall commence at **10:00 a.m. (Eastern time) on July 23, 2019,** at the offices of Pachulski Stang Ziehl & Jones LLP, 919 N. Market St., 17th Floor, Wilmington, DE 19899, or at such other place designated by the Debtors.

In advance of the Auction, the Debtors will notify all Qualified Bidders in writing of (i) the highest or otherwise best Qualified Bid, as determined by the Debtors in their discretion (the "Baseline Bid") and (ii) the time and place of the Auction.

If the Debtors do not receive more than one (1) Qualified Bid from a Qualified Bidder (inclusive of the Stalking Horse Purchaser Bid), then no Auction shall be scheduled or conducted, and the Court at the Sale Hearing shall proceed to solely consider the approval of the proposed sale to the Stalking Horse Purchaser as set forth in the Purchase Agreement and shall not consider any competing or alternative offers or proposals to purchase the Assets.

If the Auction is necessary, such Auction shall be conducted according to the following procedures:

### 25.    Participation at the Auction

Only the Stalking Horse Purchaser and Qualified Bidders that have submitted Qualified Bids are eligible to participate at the Auction. Only the authorized representatives and professional advisors of each of the Qualified Bidders, the Stalking Horse Purchaser, the Debtors, the Committee, KeyBank, the Counterparties, other creditors, and the U.S. Trustee shall be permitted to attend the Auction.

Except as otherwise set forth herein, the Debtors (in consultation with the Committee and KeyBank) may conduct the Auction in the manner they determine will result in the highest or best offer for the Assets in accordance with the Bid Procedures.

In the Debtors' sole discretion, after the conclusion of the Auction, the Debtors may resume an auction for the sale of discrete assets and/or discrete groups of assets, if any, which are not included in the Successful Bid, on such bidding procedures as may be implemented by the Debtors in their discretion (in consultation with the Committee and KeyBank).

### 26.    The Debtors Shall Conduct the Auction

The Debtors and their professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid. The determination of which Qualified Bid constitutes the Baseline Bid shall be made by the Debtors in their discretion (in consultation with the Committee and KeyBank), and may take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the estates (the "Bid Assessment Criteria"). All Bids made thereafter shall be Overbids (as defined below) and shall be made and received on an open basis, and all material terms of each Bid shall be fully disclosed to all other Qualified Bidders. The Debtors reserve the right to conduct the Auction in the manner designed to maximize value based upon the nature and extent of the Qualified Bids received in accordance with the Bid Procedures. The Debtors shall maintain a transcript of all Bids made and announced at the Auction, including the Baseline Bid, all Overbids and the Successful Bid. Pursuant to Local Rule 6004-1, each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the Bid Procedures, the Auction or the proposed transaction.

### 27.    Terms of Overbids

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Baseline Bid. To submit an Overbid for purposes of this Auction, a Qualified Bidder must comply with the following conditions:

### (a)    Minimum Overbid Increment

During the Auction, bidding shall begin initially with the Baseline Bid.  Any Overbid after the Baseline Bid shall be made in increments of at least $100,000 in cash or other consideration acceptable to the Debtors; *provided, however,* that any Overbids by the Stalking Horse Purchaser thereafter shall only be required to be equal to the sum of (1) the then existing lead Bid plus (2) the $100,000 Overbid less (3) $500,000 (*i.e.*, the amount of the Break-up Fee).

Any Overbid made by a Qualified Bidder must remain open and binding on the Qualified Bidder until and unless the Debtors (in consultation with the Committee and KeyBank) accept a higher Qualified Bid as an Overbid.

**(b)**     **Consideration of Overbids**

The Debtors reserve the right, in their reasonable business judgment (in consultation with the Committee and KeyBank), to make one or more adjournments in the Auction to, among other things:  facilitate discussions between the Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; and give Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

**28.**     **Additional Procedures**

The Debtors may adopt rules for the Auction at or prior to the Auction that, in their reasonable discretion (in consultation with the Committee and KeyBank), will better promote the goals of the Auction and that are not inconsistent with any of the provisions of the Bid Procedures Order or the Bankruptcy Code.  All such rules will provide that all Bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder (*i.e.*, the principals submitting the Bid) shall be fully disclosed to all other Qualified Bidders and that all material terms of each Qualified Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction.

The Debtors (in consultation with the Committee and KeyBank) may (a) determine which Qualified Bid, if any, is the highest and best offer and (b) reject at any time before entry of an order of the Bankruptcy Court approving the sale of the Assets pursuant to a Qualified Bid, any Bid that is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code or these Bid Procedures; or (iii) contrary to the best interest of the Debtors, their estates and their creditors.

**29.**     **Consent to Jurisdiction as Condition to Bidding**

All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of each Qualified Bidder's Contemplated Transaction Documents, as applicable.

**30.**     **Closing the Auction**

Upon conclusion of the bidding, the Auction shall be closed, and the Debtors (in consultation with the Committee and KeyBank) shall immediately identify the highest or best offer for the Assets (which may be an aggregate of bids for less than all of the Assets) (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), which highest or best offer will provide the greatest amount of net value to the Debtors, and the next highest or best

offers after the Successful Bid (the "Back-up Bid") and the entity or entities submitting the Back-up Bid (the "Back-up Bidder"), and advise the Qualified Bidders of such determination. Upon three (3) days' prior notice by the Debtors, the Back-up Bidder selected by the Debtors must immediately proceed with the closing of the transaction contemplated under the Back-up Bid in the event that the transaction with the Successful Bidder is not consummated for any reason.

As stated above, the Bids of the Successful Bidder and the Back-up Bidder must be irrevocable until the Termination Date.

### Acceptance of Successful Bid

The Debtors shall sell the Assets to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtors' presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of such Qualified Bid. The Debtors will be deemed to have accepted a Qualified Bid only when the Qualified Bid has been approved by the Bankruptcy Court at the Sale Hearing.

### "As Is, Where Is"

The sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or their estates except to the extent set forth in the Purchase Agreement or the Competing Agreement of the Successful Bidder. Each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bid Procedures or the Purchase Agreement or the Competing Agreement of the Successful Bidder.

### Free of Any and All Interests

Except as otherwise provided in the Purchase Agreement or the Successful Bidder's Competing Agreement and subject to the approval of the Bankruptcy Court, all of Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of any Liens, Claims and Encumbrances, and other interests to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Liens, Claims and Encumbrances, and other interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such, Liens, Claims and Encumbrances, and other interests applied against the Assets.

### Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on **July 25, 2019, at 2:00 p.m. (Eastern time)**, or on such other date as may be established by the Bankruptcy Court.

If the Successful Bidder fails to consummate an approved sale in accordance with the applicable asset purchase agreement or such agreement is terminated, the Debtors shall be authorized, but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtors shall be authorized, but not required, to consummate the sale with the Qualified Bidder submitting the Back-up Bid without further order of the Bankruptcy Court.

### Approval of Back-Up Bid

In the event the Debtors seek to close a Sale with the Backup Bidder (and such bidder is not the Stalking Horse Purchaser), the Debtors shall provide prompt written notice to all potentially affected counterparties, which counterparties shall have three (3) business days to object, solely on the basis of any changed circumstances regarding the proposed Cure Amount or adequate assurance since the date of the Sale Hearing and the hearing on such approval shall be on or before July 31, 2019.

### Return of Good Faith Deposit

The Good Faith Deposit of the Successful Bidder (or the Back-up Bidder that becomes a Successful Bidder) shall be applied to the Purchase Price of such transaction at Closing. The Debtors will hold the Good Faith Deposits of the Successful Bidder and the next highest Qualified Bidder in a segregated account until the closing of the sale with the Successful Bidder; Good Faith Deposits of all other Qualified Bidders shall be held in a segregated account, and thereafter returned to the respective bidders following the conclusion of the Auction. If a Successful Bidder (including any Back-up Bidder that has become the Successful Bidder) fails to consummate an approved sale because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall be entitled to retain the Successful Bidder's Good Faith Deposit as the Debtors' damages resulting from such Successful Bidder's breach or failure to perform.

DOCS_SF:100991.3 50045/001

**EXHIBIT 2**

**Form of Sale and Bid Procedures Notice**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KONA GRILL, INC., et al.,[1] | ) | Case No.: 19-10953 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

Deadline for Submitting Bids: **[To be determined] (Eastern time)**
Deadline for Objections to Sale: **[To be determined] (Eastern time)**
Auction Date: **[To be determined] (Eastern time)**
Sale Hearing Date: **[To be determined] (Eastern time)**

## NOTICE OF SALE PROCEDURES, AUCTION DATE
## AND SALE HEARING FOR SUBSTANTIALLY ALL OF DEBTORS' ASSETS

**PLEASE TAKE NOTICE** that on May 14, 2019, the above-captioned debtor and

debtors in possession (the "Debtors") filed the *Motion for Entry of an Order (I)(A) Authorizing*

*Entry into the Asset Purchase Agreement with Respect to the Sale of Substantially all of the*

*Debtors' Assets; (B) Approving Bid Procedures for the Sale of Substantially All of the Assets of*

*Debtors; (C) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and*

*Manner of Notice Related Thereto; (D) Establishing Procedures Relating to the Assumption and*

*Assignment of Certain Contracts and Leases, Including Notice of Proposed Cure Amounts; (E)*

*Approving Certain Break-up Fee Provision; (II) Authorizing and Approving (A) the Sale of Certain*

*Assets Free and Clear of All Liens, Claims and Encumbrances, Claims, Encumbrances and*

*Interests and (B) the Assumption and Assignment of Certain Contracts and Leases; And (III)*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers include:  Kona Grill, Inc. (6690); Kona Restaurant Holdings, Inc. (6703); Kona Sushi, Inc. (4253); Kona Macadamia, Inc. (2438); Kona Texas Restaurants, Inc. (4089); Kona Grill International Holdings, Inc. (1841); Kona Baltimore, Inc. (9163); Kona Grill International, Inc. (7911); and Kona Grill Puerto Rico, Inc. (7641).  The headquarters and service address for the above-captioned Debtors is 15059 North Scottsdale Road, Suite 300, Scottsdale, Arizona 85254.

*Granting Related Relief* (the "Motion").[2]  On May [#], 2019, the Court entered an order (the "Bid Procedures Order") granting the Motion in part and approving the bid procedures annexed hereto (the "Bid Procedures") to be used in connection with the auction (the "Auction") of the Debtors' assets (the "Assets").  Pursuant to the Motion, the Debtors seek, *inter alia*, the Bankruptcy Court's approval of the sale of substantially all of its assets (the "Assets") to Williston Holding Company, Inc. (the "Stalking Horse Purchaser"), or to the other successful purchaser(s) of the Assets at an auction (the "Auction"), free and clear of liens, claims, encumbrances and other interests.

## Bid Procedures and Auction

**PLEASE TAKE FURTHER NOTICE** that the Bid Procedures approved by the Bid Procedures Order, a copy of which are attached hereto as **Exhibit 1,** describe, *inter alia*, the terms of the bidding process, the requirements and deadlines for participation therein, required terms of any bids, and the time, location and conduct of the Auction.   In the event of any inconsistency or conflict between this Notice, the Bid Procedures and the Bid Procedures Order, the Bid Procedures Order shall control.

## The Sale Hearing

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has scheduled a hearing for **July 25, 2019 at 2:00 p.m. (Eastern Time)** (the "Sale Hearing") to consider approval of the winning bid(s) and confirm the results at the Auction for the Assets, pursuant to the Motion. The Sale Hearing may, however, be adjourned in open court from time to time, without further notice.  The Sale Hearing will be held before the Honorable Christopher S. Sontchi, United States

---

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.

Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom No. 6, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** that the Bid Procedures annexed hereto shall govern the bidding process and the Auction of the Assets. Any person that wishes to receive a copy of the Bid Procedures Order shall make such request in writing to Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier 19801), Attn:   John W. Lucas and James E. O'Neill,, jlucas@pszjlaw.com; joneill@pszjlaw.com.

### Objections

**PLEASE TAKE FURTHER NOTICE** that any objection to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objection with specificity, and shall be filed with the Court and shall be served on:  (i) counsel to the Debtors and Debtors-in-Possession, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE  19899-8705 (Courier 19801), Attn:  John W. Lucas and James E. O'Neill; (ii) counsel to the Official Committee of Unsecured Creditors: Kelley Drye & Warren LLP, 101 Park Avenue, New York, NY 10178, Attn: James S. Carr and Jason R. Adams, Bayard, P.A., 600 North King Street, Suite 400, P.O. Box 25130, Wilmington, DE 19899, Attn: Justin R. Alberto and Erin R. Fay; (iii) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 N. King Street, Suite 2207, Lock Box 35, Wilmington, DE 19801, Attn: Jaclyn Weissgerber; and (iv) counsel to the Stalking Horse Purchaser, Gray Plant Mooty, 500 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402 (Attn: Phillip Bohl) and Austria Legal, LLC,

3

1007 North Orange Street, 4th Floor, Wilmington, DE 19801 (Attn: Matthew Austria), so as to be received by **July 15, 2019, at 4:00 p.m. (Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that all requests for information concerning the Assets and all requests for information concerning the Bid Procedures, should be directed in writing to Pachulski Stang Ziehl & Jones LLP, 919 N. Market St., 17th Floor, Wilmington, Delaware 19801, Attn: John W. Lucas and James E. O'Neill, jlucas@pszjlaw.com; joneill@pszjlaw.com.

Dated: _____, 2019               PACHULSKI STANG ZIEHL & JONES LLP

Jeremy V. Richards (CA Bar No. 102300)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038)
919 N. Market Street, 17th Floor
Wilmington, DE 91899
Tel: (302) 652-4100
Fax: (302) 652-4400
E-mail: jrichards@pszjlaw.com
        joneill@pszjlaw.com
        jlucas@pszjlaw.com

Attorneys for Debtors and Debtors in Possession

4

**EXHIBIT 3**

**Form of Creditor Notice**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KONA GRILL, INC., et al.,[1] | ) | Case No.: 19-10953 (CSS) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

Deadline for Submitting Bids: [To be determined] (Eastern time)
Deadline for Objections to Sale: [To be determined] (Eastern time)
Auction Date: [To be determined] (Eastern time)
Sale Hearing Date: [To be determined] (Eastern time)

## NOTICE OF AUCTION AND SALE HEARING FOR DEBTORS' ASSETS

**PLEASE TAKE NOTICE** that on May 14, 2019, the above-captioned debtor and debtor-in-possession (the "Debtor") filed *Motion for Entry of an Order (I)(A) Authorizing Entry into the Asset Purchase Agreement with Respect to the Sale of Substantially all of the Debtors' Assets; (B) Approving Bid Procedures for the Sale of Substantially All of the Assets of Debtors; (C) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (D) Establishing Procedures Relating to the Assumption and Assignment of Certain Contracts and Leases, Including Notice of Proposed Cure Amounts; (E) Approving Certain Break-up Fee Provision; (II) Authorizing and Approving (A) the Sale of Certain Assets Free and Clear of All Liens, Claims and Encumbrances, Claims, Encumbrances and Interests and (B) the Assumption and Assignment of Certain Contracts and Leases; and (III)*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers include:  Kona Grill, Inc. (6690); Kona Restaurant Holdings, Inc. (6703); Kona Sushi, Inc. (4253); Kona Macadamia, Inc. (2438); Kona Texas Restaurants, Inc. (4089); Kona Grill International Holdings, Inc. (1841); Kona Baltimore, Inc. (9163); Kona Grill International, Inc. (7911); and Kona Grill Puerto Rico, Inc. (7641).  The headquarters and service address for the above-captioned Debtors is 15059 North Scottsdale Road, Suite 300, Scottsdale, Arizona 85254.

*Granting Related Relief* (the "Motion").[2]  On May ▓, 2019, the Court entered an order (the "Bid Procedures Order") granting the Motion in part and approving certain bid procedures (the "Bid Procedures") to be used in connection with the auction (the "Auction") of the Debtor's assets described in the Motion (the "Assets").  Pursuant to the Motion, the Debtors seek, *inter alia*, the Bankruptcy Court's approval of the sale of substantially all of its assets (the "Assets") to Williston Holding Company, Inc. (the "Stalking Horse Purchaser"), or to the other successful purchaser(s) of the Assets at an auction (the "Auction"), free and clear of liens, claims, encumbrances and other interests.  The Bid Procedures shall govern the bidding process and the Auction of the Assets.  Any person that wishes to receive a copy of the Bid Procedures or the Bid Procedures Order shall make such request in writing to Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, Delaware 19899-8705 (Courier 19801), Attn:  John W. Lucas and James E. O'Neill.

### The Sale Hearing

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has scheduled a hearing for **July 25, 2019 at 2:00 p.m. (Eastern Time)** (the "Sale Hearing") to consider approval of the winning bid(s) and confirm the results at the Auction for the Assets, pursuant to the Motion.  The Sale Hearing may, however, be adjourned in open court from time to time, without further notice.  The Sale Hearing will be held before the Honorable Christopher S. Sontchi, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom No. 6, Wilmington, Delaware 19801.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.

2

## Objections

**PLEASE TAKE FURTHER NOTICE** that any objection to any of the relief to be requested at the Sale Hearing must be in writing, state the basis of such objection with specificity, and shall be filed with the Court and shall be served on: (i) counsel to the Debtor and Debtor-in-Possession, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, P.O. Box 8705, Wilmington, DE 19899-8705 (Courier 19801), Attn: John W. Lucas and James E. O'Neill; (ii) counsel to the Official Committee of Unsecured Creditors, Kelley Drye & Warren LLP, 101 Park Avenue, New York, NY 10178, Attn: James S. Carr and Jason R. Adams, Bayard, P.A., 600 North King Street, Suite 400, P.O. Box 25130, Wilmington, DE 19899, Attn: Justin R. Alberto and Erin R. Fay (iii) the Office of the United States Trustee, J. Caleb Boggs Federal Building, 844 N. King Street, Suite 2207, Lock Box 35, Wilmington, DE 19801, Attn: Jaclyn Weissgerber; and (iv) counsel to the Stalking Horse Purchaser Gray Plant Mooty, 500 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402 (Attn: Phillip Bohl) and Austria Legal, LLC, 1007 North Orange Street, 4th Floor, Wilmington, DE 19801 (Attn: Matthew Austria), so as to be received by **July 15, 2019 at 4:00 p.m. (Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that all requests for information concerning the Assets and all requests for information concerning the Bid Procedures, should be directed in writing to Pachulski Stang Ziehl & Jones LLP, 919 N. Market St., 17th Floor, Wilmington, Delaware 19801, Attn: John W. Lucas and James E. O'Neill, jlucas@pszjlaw.com; joneill@pszjlaw.com.

Dated: _____, 2019          PACHULSKI STANG ZIEHL & JONES LLP

3

Jeremy V. Richards (CA Bar No. 102300)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038)
919 N. Market Street, 17th Floor
Wilmington, DE 91899
Tel:  (302) 652-4100
Fax: (302) 652-4400
E-mail:  jrichards@pszjlaw.com
          joneill@pszjlaw.com
          jlucas@pszjlaw.com

Attorneys for Debtors and Debtors in Possession

4

## EXHIBIT 4

**Form of Cure Notice**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KONA GRILL, INC., et al.,[1] | ) | Case No.: 19-10953 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**Deadline for Submitting Bids: [To be determined] (Eastern time)**
**Deadline for Objections to Sale: [To be determined] (Eastern time)**
**Auction Date: [To be determined] (Eastern time)**
**Sale Hearing Date: [To be determined] (Eastern time)**

## NOTICE TO COUNTERPARTIES TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED

**PLEASE TAKE NOTICE** that on April 30, 2019 (the "Petition Date"), the above-captioned debtors and debtors in possession (the "Debtors") filed voluntary petitions for relief under title 11 of the United States Code (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE** that on May 14, 2019, the above-captioned debtors and debtors in possession (the "Debtors") filed the *Motion for Entry of an Order (I)(A) Authorizing Entry into the Asset Purchase Agreement with Respect to the Sale of Substantially all of the Debtors' Assets; (B) Approving Bid Procedures for the Sale of Substantially All of the Assets of Debtors; (C) Scheduling an Auction and Hearing to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; (D) Establishing Procedures Relating to the Assumption and Assignment of Certain Contracts and Leases, Including Notice of Proposed*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers include: Kona Grill, Inc. (6690); Kona Restaurant Holdings, Inc. (6703); Kona Sushi, Inc. (4253); Kona Macadamia, Inc. (2438); Kona Texas Restaurants, Inc. (4089); Kona Grill International Holdings, Inc. (1841); Kona Baltimore, Inc. (9163); Kona Grill International, Inc. (7911); and Kona Grill Puerto Rico, Inc. (7641). The headquarters and service address for the above-captioned Debtors is 15059 North Scottsdale Road, Suite 300, Scottsdale, Arizona 85254.

*Cure Amounts; (E) Approving Certain Break-up Fee Provision; (II) Authorizing and Approving (A) the Sale of Certain Assets Free and Clear of All Liens, Claims and Encumbrances, Claims, Encumbrances and Interests and (B) the Assumption and Assignment of Certain Contracts and Leases; and (III) Granting Related Relief* (the "Motion").[2]  On May ▓, 2019, the Court entered an order (the "Bid Procedures Order") granting the Motion in part and approving the bid procedures annexed hereto (the "Bid Procedures") to be used in connection with the auction (the "Auction") of the Debtors' assets described in the Motion (the "Assets") pursuant to the asset purchase agreement annexed as Exhibit C to the Motion (the "Purchase Agreement").  Pursuant to the Motion, the Debtors seek, *inter alia*, the Bankruptcy Court's approval of the sale of substantially all of its assets (the "Assets") to Williston Holding Company, Inc. (the "Stalking Horse Purchaser"), or to the other successful purchaser(s) (the "Successful Bidder") of the Assets at an auction, free and clear of liens, claims, encumbrances and other interests.

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has scheduled a hearing for **July 25, 2019 at 2:00 p.m. (Eastern Time)** (the "Sale Hearing") to consider approval of the winning bid(s) and confirm the results at the Auction for the Assets, pursuant to the Motion, before the Honorable Christopher S. Sontchi, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 5th Floor, Courtroom No. 6, Wilmington, Delaware 19801.

**PLEASE TAKE FURTHER NOTICE** that you are a party to an executory contract(s) or unexpired lease(s) that has been designated for assumption by the Debtors and

---

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion.

assignment to the Stalking Horse Purchaser, or alternatively, to the Successful Bidder (each an "Assumed Executory Contract").  A list of the Assumed Executory Contracts is set forth on **Exhibit A** hereto, along with the amount that must be paid to cure any defaults existing under such executory contracts (the "Cure Amount"), based upon the Debtors' books and records, which the Debtors asserts is owed to cure any defaults existing under the Assumed Executory Contract as of the Petition Date.[3]

   **PLEASE TAKE FURTHER NOTICE** that a Successful Bidder, as applicable, may subsequently elect to exclude any agreement or agreements from the list of Assumed Executory Contracts at any time prior to the closing of the sale of the Assets, including the potential exclusion of the Assumed Executory Contract listed on **Exhibit A** hereto.  Cure Amounts, if any, shall only be paid with respect to Assumed Executory Contracts that are actually assumed pursuant to the closing of the sale of the assets in accordance with the Purchase Agreement, or the purchase agreement of the Successful Bidder.  In the event that a Successful Bidder elects to exclude any Assumed Executory Contracts, the affected counterparties will be separately notified of any such election.

   **PLEASE TAKE FURTHER NOTICE** that if you disagree with the Cure Amount shown for the Assumed Executory Contract on **Exhibit A,** or if you object to the assumption and assignment of your Assumed Executory Contract on any grounds, you must file an objection in writing with the United States Bankruptcy Court for the District of Delaware, 824 Market Street,

---

[3] Your receipt of this notice does not constitute an admission by the Debtors that your agreement actually constitutes an executory contract or unexpired lease under section 365 of the Bankruptcy Code, and the Debtors expressly reserve the right to challenge the status of any agreement.

Wilmington, Delaware 19801, on or before **July 15, 2019, at 4:00 p.m.(Eastern Time)**.   In

addition, any objection must set forth the specific default or defaults alleged, set forth any such

other ground for objection, and set forth any Cure Amount as alleged by you, including such

documentation and records as supports your asserted cure amount.

      **PLEASE TAKE FURTHER NOTICE** that any objection to any of the relief to

be requested at the Sale Hearing must be in writing, state the basis of such objection with

specificity, and shall be filed with the Court and shall be served on (i) counsel to the Debtor and

Debtor-in-Possession, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor,

P.O. Box 8705, Wilmington, DE  19899-8705 (Courier 19801), Attn:  John W. Lucas and James

E. O'Neill; (ii) counsel to the Official Committee of Unsecured Creditors, Kelley Drye & Warren

LLP, 101 Park Avenue, New York, NY 10178, Attn: James S. Carr and Jason R. Adams, Bayard,

P.A., 600 North King Street, Suite 400, P.O. Box 25130, Wilmington, DE 19899, Attn: Justin R.

Alberto and Erin R. Fay; (iii) the Office of the United States Trustee, J. Caleb Boggs Federal

Building, 844 N. King Street, Suite 2207, Lock Box 35, Wilmington, DE 19801, Attn: Jaclyn

Weissgerber; and (iv) counsel to the Stalking Horse Purchaser, Gray Plant Mooty, 500 IDS Center,

80 South Eighth Street, Minneapolis, MN 55402 (Attn: Phillip Bohl) and Austria Legal, LLC,

1007 North Orange Street, 4th Floor, Wilmington, DE 19801 (Attn: Matthew Austria), so as to be

received by **July 15, 2019 at 4:00 p.m. (Eastern Time)**.

      **PLEASE TAKE FURTHER NOTICE THAT IF YOU DO NOT TIMELY**

**FILE AND SERVE AN OBJECTION OR OBJECTIONS AS STATED ABOVE, THE**

**COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT**

FURTHER NOTICE.  ANY NON-DEBTOR PARTY TO ANY ASSUMED EXECUTORY CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION TO THE CURE AMOUNTS FOR SUCH ASSUMED EXECUTORY CONTRACT IS DEEMED TO HAVE CONSENTED TO SUCH CURE AMOUNTS, AND ANY NON-DEBTOR PARTY TO ANY ASSUMED CONTRACT WHO DOES NOT FILE A TIMELY OBJECTION ON OTHER GROUNDS IS DEEMED TO HAVE CONSENTED TO SUCH ASSIGNMENT AND ASSUMPTION.

Dated: _____, 2019

PACHULSKI STANG ZIEHL & JONES LLP

Jeremy V. Richards (CA Bar No. 102300)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038)
919 N. Market Street, 17th Floor
Wilmington, DE 91899
Tel:  (302) 652-4100
Fax: (302) 652-4400
E-mail:  jrichards@pszjlaw.com
        joneill@pszjlaw.com
        jlucas@pszjlaw.com

Attorneys for Debtors and Debtors in Possession