# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KONA GRILL, INC., et al.,[1] | ) | Case No.: 19-10953 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

Cure Objection Deadline: Sept. 17, 2019 at 4:00 p.m. (ET)
Sale Objection Deadline: Sept. 17, 2019 at 4:00 p.m. (ET)
Hearing Date and Time: Sept. 24, 2019, at 2:00 p.m. (ET)

## DEBTOR'S MOTION FOR (I) ENTRY OF AN ORDER AUTHORIZING, UNDER SECTIONS 105, 363, 365, 1107 AND 1108 OF THE BANKRUPTCY CODE, (A) THE SALE OF ASSETS PURSUANT TO THE PURCHASE AGREEMENT FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS THEREUNDER; (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (C) CONSUMMATION OF THE PURCHASE AGREEMENT AND RELATED DOCUMENTS; AND (D) DISTRIBUTE SALE PROCEEDS TO KEYBANK NATIONAL ASSOCIATION; (II) ENTRY OF AN ORDER VACATING THE COURT'S PRIOR SALE ORDER; AND (III) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (the "Debtors") move the Court for the entry of an order, pursuant to Bankruptcy Code sections 105, 363, 365, 1107 and 1108 (a) approving the private sale (the "Sale") of twenty-four of the Debtors' United States restaurants, the associated assets, and the assumption and assignment of certain contracts and leases as described in and subject to the terms and conditions of that certain Asset Purchase Agreement, dated August 30, 2019 (the "Purchase Agreement"), a copy of which is annexed hereto as **Exhibit A**, between the Debtors and Kona Grill Acquisition, LLC (the "Purchaser"),

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers include: Kona Grill, Inc. (6690); Kona Restaurant Holdings, Inc. (6703); Kona Sushi, Inc. (4253); Kona Macadamia, Inc. (2438); Kona Texas Restaurants, Inc. (4089); Kona Grill International Holdings, Inc. (1841); Kona Baltimore, Inc. (9163); Kona Grill International, Inc. (7911); and Kona Grill Puerto Rico, Inc. (7641). The headquarters and service address for the above-captioned Debtors is 15059 North Scottsdale Road, Suite 300, Scottsdale, Arizona 85254.

free and clear of liens, claims, encumbrances, and interests; (b) vacating the Court's prior sale order; and (c) granting related relief. In support of the Motion, the Debtors respectfully represents as follows:

### Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirms its consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

3. On April 30, 2019 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors' cases are being jointly administered for procedural purposes only. The Debtors are operating their business and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On May 21, 2019, the Office of the United States

Trustee appointed the official committee of unsecured creditors [Docket No. 113] (the "Committee"). No request has been made for the appointment of a trustee or an examiner in these cases.

3. The Debtors currently own and operate twenty-four casual dining restaurants in eighteen states. Each restaurant location seats an average of 290 customers. In addition, the Debtors have one international restaurant located in Canada and another international restaurant located in the United Arab Emirates that both operate under franchise agreements. The Debtors operate their restaurants under the name Kona Grill™. The Debtors' restaurants offer freshly prepared food, attentive service, and an upscale contemporary ambience that creates an exceptional, yet affordable dining experience. The restaurants feature contemporary American favorites, award-winning sushi and an extensive selection of alcoholic beverages. The Debtors believe that their innovative menu items, generous portions, and flexible price points provide customers with a compelling value proposition and allow them to attract a diverse customer base.

4. The factual background regarding the Debtors, including their current and historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of Christopher J. Wells in Support of First Day Pleadings* [Docket No. 16] (the "First Day Declaration") filed on the Petition Date and fully incorporated herein by reference.

## Relief Requested

5. By this Motion, the Debtors seeks (a) entry of an order authorizing (i) the Sale of the assets to the Purchaser, pursuant to the terms and conditions set forth in the Purchase Agreement annexed hereto as **Exhibit A**, free and clear of all liens, claims and encumbrances,

and other interests, except as provided in the Purchase Agreement (with all liens, claims, and encumbrances, and other interests to attach to the sale proceeds with the same validity and in the same order of priority as they attached to the Purchased Assets[2] prior to the Sale); (ii) the assumption and assignment to the Purchaser of the executory contracts and unexpired leases; (iii) the Debtors to consummate the Purchase Agreement and all documents, agreements, and contracts executed in conjunction therewith; and (iv) distribute sale proceeds to the Debtors' prepetition and postpetition lender, KeyBank National Association; and (b) entry of a separate order vacating the Court's prior sale order (the "Original Sale Order") [Docket No. 305] that was entered on July 25, 2019. A proposed form of order (the "Sale Order") approving the Purchase Agreement is annexed hereto as **Exhibit B** and a proposed form of order vacating the Court's Original Sale Order is annexed hereto as **Exhibit C**.

### The Original Marketing Process and Sale

6. The Debtors, with assistance of Piper Jaffray ("Piper"), their investment banker, formally commenced the sale process in March of 2019. Marketing materials, including an executive summary and a Confidential Informational Memorandum ("CIM") were prepared. The Debtors also set up an online data site with diligence materials and identified potential buyers. Piper targeted 186 select parties, contacted 181 parties, sent out 70 non-disclosure agreements, and sent CIMs to 51 parties in an effort to market the Debtors' assets.

7. There were initially five parties reviewing the terms of the proposed asset purchase agreement. However, on May 14, 2019, the Debtors filed a sale and procedures motion

---

[2] All capitalized terms not defined herein have the meanings used in the Purchase Agreement.

[Docket No. 93] (the "Original Sale Motion"), seeking, among other things, approval of the process and procedures through which they will determine the highest and best offer for the sale of substantially all of the business assets of the Debtors (the "Bid Procedures"). On May 29, 2019, the Bankruptcy Court entered its order [Docket No. 170] (the "Bid Procedures Order"), which, among other things, approved the Bid Procedures. The Bid Procedures Order authorized the Debtors entry into an asset purchase agreement (the "Original APA") with Williston Holding Company, Inc. ("Williston"), which served as a stalking horse bidder for the sale of the assets, subject to higher and better bids that may be submitted in accordance with these Bid Procedures.

8. The Bid Procedures set July 15, 2019 as the last day for parties to object the Original Sale Motion and July 18, 2019 as the last day for parties to submit competing bids, which if acceptable would have resulted in an auction on July 23, 2019. As the Court is aware, the Debtors did not receive any other bids. As a result, the Debtors cancelled the auction [Docket No. 292] and requested entry of an order approving the Original Sale Motion. On July 25, 2019, the Court entered an order [Docket No. 305] (the "Original Sale Order") approving the Debtors' entry into a sale agreement with Williston.

9. Notice of the bidding procedures including the bid deadline and potential auction date was served on all interested parties including 67 potential bidders identified by Piper. No additional qualified bids were received by the bid deadline, July 18, 2019. As a result, the Debtors sought and obtained the Court's authorization to consummate the Original APA with Williston, which was approved by entry of the Original Sale Order.

10. On July 29, 2019, Williston's counsel informed the Debtors that it will not be able to close by the outside date of July 31, 2019 per the terms of the Original APA. In response, on or about August 1, 2019, the Debtors terminated the Original APA.

11. Since this time, the Debtors and their took the following actions: (a) negotiated an extension of the Debtors' existing DIP financing facility, which was approved by the Court [Docket No. 330]; (b) engaged Williston's counsel about resurrecting the Original APA subject to certain terms and conditions; (c) Piper reengaged other interested parties about purchasing the Debtors' assets; and (d) engaged in discussions with KeyBank regarding restructuring alternatives that would preserve the Debtors' operations.

12. Given the prepetition and postpetition marketing undertaken by Piper, the lack of responses the Debtors received by the bid deadline, and that Williston is no longer interested or able to resurrect the Original APA, the Debtors believe that entry into the Purchase Agreement with Purchaser is the best course of action because: (a) the Sale is for a greater amount of cash than the Original APA, (b) it will preserve hundreds of jobs of the Debtors' employees, (c) dozens of the Debtors' vendors and lease counterparties will continue to have a customer or tenant, and (d) it will enable the Debtors to consummate a sale and wind down the remainder of their assets and estates.

**The Purchase Agreement**

13. The following are the material terms of the proposed Purchase Agreement:[3]

---

[3] The following is only a summary of certain of the terms and provisions of the Purchase Agreement. In the event of any conflict between the summary set forth in this Motion and the Purchase Agreement, the terms and provisions of the Purchase Agreement control. Capitalized terms not defined herein have the meanings used in the Purchase Agreement.

6

| | |
|---|---|
| Purchase Price | $25,000,000 in cash, plus the assumption of the Assumed Liabilities in the approximate aggregate amount of $10,800,000, which include: (a) cure claims of executory contracts and unexpired leases, (b) postpetition accounts payable, (c) unpaid payroll that comes due and payable after the closing (even if it relates to the pre-closing period), (d) accrued but unused paid time off for restaurant employees, (e) certain accrued taxes, (f) customer program liabilities (*i.e.*, gift cards and "Konavore" program), (g) real estate restructuring fees of Keene Summit Capital Partners, and (h) transfer taxes. |
| Purchaser | Kona Grill Acquisition, LCC |
| Purchased Assets | The Debtors' right, title and interest in substantially all of the assets heretofore used exclusively in connection with or arising out of the operation of the Debtors' business as further set forth in section 1.1 of the Purchase Agreement and schedules thereto, including certain personal property, intangible property, governmental permits and licenses to the extent transferrable, and inventory. |
| Excluded Assets | Cash and cash equivalents, bank accounts, among other assets as further set forth in section 1.2 of the Purchase Agreement. |
| Assumed Liabilities | Liabilities and cure costs under assumed contracts and various other specified obligations as further set forth in section 2.3 of the Purchase Agreement. |
| Closing Deadline | Closing shall be held upon the third business day following satisfaction of the conditions set forth in section 3 of the Purchase Agreement, and in any event no later than October 11, 2019. |
| Representations and Warranties | Customary for transactions of this kind. Except as specifically set forth in the Purchase Agreement, the Stalking Horse Purchaser will accept the Property at the Closing "AS-IS," "WHERE-IS," and "WITH ALL FAULTS." |
| Termination Rights | Customary for transactions of this kind. |

**Authority for the Requested Relief**

A.  **The Proposed Sale of the Assets Should be Approved Under Sections 363(b) and 365 of the Bankruptcy Code**

14.  The Debtors bring this Motion to seek approval of the transaction outside the ordinary course of its business. The Court should enter an order granting the relief requested herein because it represents a sound exercise of the Debtors' business judgment pursuant to

7

sections 363(b)(1) and 365 of the Bankruptcy Code and is appropriate under section 105(a) of the Bankruptcy Code.

15. Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code does not set forth a standard for determining when a sale or disposition of property of the estate should be authorized, courts in the Third Circuit generally authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

16. Specifically, courts in this district have held consistently that the sale of estate assets outside the ordinary course of business is appropriate if: (a) there is a sound business purpose for the sale; (b) the proposed sale price is fair; (c) the debtor has provided interested parties with adequate and reasonable notice; and (d) the buyer has acted in good faith. *See, e.g., In re Exaeris, Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008); *In re Decora Indus., Inc.*, No. 00-4459, 2002 WL 32332749, at *7-8 (D. Del. May 20, 2002).

17. Moreover, if a valid business justification exists for the sale of property of the estate, a debtor's decision to sell property out of the ordinary course of business enjoys a strong presumption "that in making a business decision the directors . . . acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the

8

company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re Bridgeport Hldgs., Inc.*, 388 B.R. 548, 567 (Bankr. D. Del. 2008) (stating that directors enjoy a presumption of honesty and good faith with respect to negotiating and approving a transaction involving a sale of assets). Parties objecting to the debtor's decision to sell property of the estate must make a showing of "bad faith, self interest or gross negligence." *Integrated Res.*, 147 B.R. at 656; s*ee also In re Johns Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."). Accordingly, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

18. Here, the Debtors respectfully submit that sound business reasons support their decision to enter into the Purchase Agreement. First, the Debtors respectfully submit that it is reasonably unlikely that any other bidders will submit a bid approaching, let alone exceeding, the amount of the Purchaser's potential bid, which is already in excess of the consideration proposed under the Original APA. Second, the transaction will enable the Debtors to fund an orderly wind-down of its business though this chapter 11 case without incurring additional operating expenses at a time when the Debtors have no operating financing and minimal cash on hand. Third, prior to and after the Petition Date, the Debtors have extensively marketed the company as a whole, and now reasonably seek to entertain offers on individual assets given that the Debtors and Williston were not able to close the Original APA. While the Debtors are no

9

longer soliciting bids from third parties (as they believe these efforts have been exhaustive), subject to the exclusivity provision in the APA and only in exercise of their fiduciary duties they will certainly entertain any higher or better offers submitted by Williston or any other third party.

19. Accordingly, the Debtors, in its sound business judgment, believe that sale of the Assets to the Purchaser is in the best interests of its estate and that the proposed transaction should be approved by the Court pursuant to section 363(b) of the Bankruptcy Code.

**B.    The Court Should Authorize the Sale of the
       Purchased Assets Free and Clear of Liens, Claims, Encumbrances,
       and Other Interests Pursuant to Section 363(f) of the Bankruptcy Code**

20. The Debtors also seeks to sell the Assets free and clear of all liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of any interest in such property if:

(1)   applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)   such entity consents;

(3)   such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

(4)   such interest is in bona fide dispute; or

(5)   such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of its five requirements is sufficient to permit the sale of the Acquired Assets "free and clear" of liens and interests. *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002); *Decora Indus., Inc.*, 2002 WL 32332749, at *7; *In re Elliot*, 94 B.R. 343,

345 (E.D. Pa. 1988). The Court also may authorize the sale of a debtor's assets free and clear of any liens pursuant to section 105 of the Bankruptcy Code, even if section 363(f) does not apply. *See In re Trans World Airlines, Inc.*, No. 01–0056 (PJW), 2001 WL 1820325, at *3 (Bankr. D. Del. Mar. 27, 2001).

21. As discussed above, the only liens on the Assets of which the Debtors is aware is the lien of KeyBank on all of the Debtors's assets and certain statutory liens of certain state taxing authorities. KeyBank and the applicable taxing authorities have consented to the Sale free and clear of its liens, with such liens attaching to the proceeds of the Sale, provided that the Debtors shall use such proceeds subject to and in accordance with any order for use of cash collateral and budget. The Debtors submits that every other Interest will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such Interest will be adequately protected by either being paid in full at the time of closing, or by having it attach to the net proceeds of the Sale, subject to any claims and defenses the Debtors may possess with respect thereto. Thus, a Sale free of Interests is permitted.

C. **The Court Should Grant the Purchaser the Full Protections Afforded to a Good Faith Purchaser Pursuant to Section 363(m) of the Bankruptcy Code**

22. Section 363(m) of the Bankruptcy Code provides, in relevant part:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). Section 363(m) of the Bankruptcy Code thus protects a purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in

11

the purchased assets if the order allowing the sale is reversed on appeal. Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit has stated that a good faith purchaser is "one who purchases in 'good faith' and for 'value.'" *In re Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir. 1986). To constitute a lack of good faith, a party's conduct in connection with the sale usually must amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." *Id.* (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).

23. Here, there is no fraud or collusion between the Purchaser or any of its affiliates and the Debtors. Before the execution of the Purchase Agreement, the Debtors and the Purchaser engaged in extensive arm's-length discussions to reach a deal. The Debtors and the Purchaser were represented by separate counsel in connection with the negotiation and documentation of the Purchase Agreement, which the Debtors' Chief Restructuring Officer approved and ratified. Accordingly, the Debtors requests that the Court determine that the Purchaser has negotiated and acted at all times in good faith and, as a result, is entitled to the full protections of a good faith purchaser under section 363(m) of the Bankruptcy Code, and that the Purchase Agreement does not constitute an avoidable transaction pursuant to section 363(n) of the Bankruptcy Code.

**D.     A Private Sale of the Acquired Assets is Appropriate Under Bankruptcy Rule 6004**

24. Bankruptcy Rule 6004(f) and Local Rule 6004-11(b)(iv)(D) permit a debtor to conduct a private sale pursuant to section 363. Specifically, Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by

public auction." Fed. R. Bankr. P. 6004(f)(1) (emphasis added); s*ee also In re Alisa P'ship*, 15 B.R. 802, 802 (Bankr. D. Del 1981) (holding that manner of sale is within the debtor's discretion); *In re Bakalis*, 220 B.R. 525, 531–32 (Bankr. E.D.N.Y. 1998) (stating that debtor has authority to conduct public or private sales of estate property).

25.     Accordingly, in light of Bankruptcy Rule 6004(f) and case law regarding section 363 sales, a debtor may conduct a private sale if a good business reason exists. *See, e.g.*, *In re Pritam Realty, Inc.*, 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale conducted by a chapter 11 debtor); *In re Condere Corp.*, 228 B.R. 615, 629 (Bankr. S.D. Miss. 1998) (authorizing private sale of debtors' tire company where "[d]ebtor has shown a sufficient business justification for the sale of the assets to the [p]urchaser"); *In re Embrace Sys. Corp.*, 178 B.R. 112, 123 (Bankr. W.D. Mich. 1995) ("A large measure of discretion is available to a bankruptcy court in determining whether a private sale should be approved. The court should exercise its discretion based upon the facts and circumstances of the proposed sale."); *In re Wieboldt Stores, Inc.*, 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale).

26.     Indeed, courts in this and other districts have approved private sales of estate property pursuant to section 363(b)(1) when there has been a valid business reason for not conducting an auction. *See, e.g.*, *Buffets Holdings, Inc.*, No. 08–10141 (MFW) (Bankr. D. Del. Feb. 3, 2009) (approving the private sale of real property for approximately $2.4 million); *In re W.R. Grace & Co.*, No. 01–01139 (JKF) (Bankr. D. Del. Dec. 18, 2008) (approving the private sale of real property for approximately $3.8 million); *In re Wellman, Inc.*, No. 08–10595

13

(SMB) (Bankr. S.D.N.Y. Oct. 6, 2008) (approving private sale of industrial complex capable of converting recycled carpet *into* nylon engineered resins for $17.9 million); *In re W.R. Grace & Co.*, No. 01-01139 (JKF) (Bankr. D. Del. July 23, 2007) (authorizing private sale of business line which designs and manufactures materials used in catalytic converters to remove pollutants produced by engines for approximately $22 million); *In re Solutia, Inc.*, No. 03-17949 (SCC) (Bankr S.D.N.Y. Dec. 28, 2006) (approving private sale of real property for approximately $7.1 million).[4]

27. The Debtors submit that the proposed private sale of the Assets to the Purchaser in accordance with the Purchase Agreement is appropriate in light of the facts and circumstances of this chapter 11 case. Specifically, given the proposed purchase price for the Assets, the low probability that a competing bidder will actually emerge with an offer higher or better to top the bid does not justify the costs and risks associated with delay.

28. As a result, the transaction with the Purchaser allows the Debtors to maximize the value of the Assets and provides much needed liquidity to the Debtors' estates. Because a private sale is specifically authorized under Bankruptcy Rule 6004 and the Debtors believe that the Purchaser's offer is the highest and best offer for the Assets (indeed, the Debtors do not believe any other offer could be obtained on better terms), the Debtors request that the Court approve the proposed private sale of the Assets to the Purchaser in accordance with the Purchase Agreement.

E. **Assumption and Assignment of Certain Executory Contracts and Unexpired Leases**

---

[4] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors's proposed counsel.

29. As part of the Purchase Agreement, the Debtors are seeking authorization to assume and assign the executory contracts and unexpired leases to the Purchaser, which are listed on **Exhibit D** annexed hereto (the "Purchased Contracts"). The Purchased Contracts listed on **Exhibit D** show the name of the counterparty, the contract, and the cure amount, which was already reconciled in connection with the Original Sale Motion. In addition, the Debtors and their advisors will distribute adequate assurance information to the Purchased Contracts counterparties listed on **Exhibit D**.

30. If a Purchased Contract is assumed and assigned pursuant to Court order, then unless the applicable counterparties to such contract or lease (each a "Counterparty" and collectively, the "Counterparties") properly files and serves an objection to the cure amount (the "Cure Amount") contained in **Exhibit D** by the objection deadline, the Counterparty will receive, at the time of the closing of the Sale (or as soon as reasonably practicable thereafter), the Cure Amount as set forth therein, if any. If an objection is filed by a Counterparty to a Purchased Contract, the Debtors propose that such objection must set forth a specific default in the executory contract or unexpired lease, claim a specific monetary amount that differs from the Cure Amount, if any, specified by the Debtors in **Exhibit D**, along with such documentation supporting this amount, and set forth any reason why the Counterparty believes the executory contract or unexpired lease cannot be assumed and assigned to the Purchaser.

31. If any Counterparty objects for any reason to the assumption and assignment of a Purchased Contract (including an objection to a proposed Cure Amount), the Debtors propose that the Counterparty must file the objection and serve it so as to be actually received on or before

DOCS_SF:101690.5 50045/002

the objection deadline, upon the Debtors and the other notice parties identified therein by no later than **4:00 p.m. (Eastern Time) on September 17, 2019**.

33. The Purchaser is responsible for satisfying any requirements regarding adequate assurance of future performance that may be imposed under section 365(b) of the Bankruptcy Code in connection with the proposed assignment of any Purchased Contract, and the failure to provide adequate assurance of future performance to any Counterparty to any Purchased Contract shall not excuse the Purchaser from performance of any and all of its obligations pursuant to the Purchase Agreement. The Debtors propose that the Court make its determinations concerning adequate assurance of future performance under the Purchased Contracts pursuant to section 365(b) of the Bankruptcy Code at the Sale Hearing. Disputed Cure Amounts will be resolved by the Court at the Sale Hearing or such later date as may be agreed to or ordered by the Court.

33. Section 365(a) of the Bankruptcy Code provides that, subject to the court's approval, a trustee "may assume or reject any executory contracts or unexpired leases of the debtor." 11 U.S.C. § 365(a). Upon finding that a trustee has exercised its sound business judgment in determining to assume an executory contract or unexpired lease, courts will approve the assumption under section 365(a) of the Bankruptcy Code. *See Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996); *see also Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993).

34. Pursuant to section 365(f)(2) of the Bankruptcy Code, a trustee may assign an executory contract or unexpired lease of nonresidential real property if:

16

> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

35. The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985) ("Although no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance.").

36. Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *In re Bygaph, Inc.*, 56 B.R. 596, 605-6 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease has financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding; chief determinant of adequate assurance is whether rent will be paid).

37. The Debtors and the Purchaser will present evidence at the Sale Hearing to prove the financial credibility, willingness, and ability of the Purchaser to perform under the Purchased Contracts. The Court and other interested parties therefore will have the opportunity to

17

evaluate the ability of the Purchaser to provide adequate assurance of future performance under the Assumed Executory Contracts, as required by section 365(b)(1)(C) of the Bankruptcy Code.

38. In addition, the Debtors believe that the proposed cure amounts are up to date and accurate and that notice provided to the counterparties will afford the affected party to opportunity to exercise any rights affected by the Motion, and consistent with Section 365 of the Bankruptcy Code. To the extent that any defaults exist under any Purchased Contract, any such defaults will be cured pursuant to the Purchase Agreement. Except as otherwise limited by Section 365 of the Bankruptcy Code, any provision in the Purchased Contract that would restrict, condition, or prohibit an assignment of such contracts will be deemed unenforceable pursuant to Section 365(f)(1) of the Bankruptcy Code.

### F. Distribution of Sale Proceeds and Wind Down Budget

39. At the closing of the Sale, the Debtors are seeking authorizing to distribute sale proceeds to KeyBank, which will be used to reduce the Debtors' obligations under the DIP Facility.

40. Certain of the Sale proceeds will be reserved for the Debtors to pay administrative claims (excluding administrative claims assumed by the Purchaser) and otherwise wind down these cases, all in accordance with the budget annexed to the Sale Order as **Exhibit 3** (the "Wind-Down Budget"). Funding of the Wind-Down Budget shall satisfy the requirements of paragraph 9(e) of the final DIP order [Docket No.165]. Any funds remaining following the wind-down of these cases (whether through dismissal, conversion, confirmation of a plan of

DOCS_SF:101690.5 50045/002

reorganization or liquidation or otherwise) shall be remitted to KeyBank for application to the obligation under the DIP facility.

## Waiver of Bankruptcy Rule 6004

41. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable. As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to generate revenues for its estate. Accordingly, the Debtors respectfully requests that the Court waive the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), so that the Debtors may perform its obligations timely under the Purchase Agreement.

Notice

42. Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Committee; (c) the Debtors' prepetition and postpetition lender; (d) the Purchaser; (e) Williston and all parties who have expressed an interest in acquiring some or all of the Debtors' assets; (f) all known holders of liens, claims, and other encumbrances secured by the assets constituting the Assets; (g) all applicable federal, state, and local taxing authorities, including the Internal Revenue Service; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors respectfully submits that, in light of the nature of the relief requested, no other or further notice need be given.

DOCS_SF:101690.5 50045/002

WHEREFORE, the Debtors respectfully requests that the Court enter the proposed Sale Order, substantially in the form attached hereto as **Exhibit B**, granting the relief requested herein, and enter an order substantially in form attached hereto as **Exhibit C** vacating the Original Sale Order, and such other and further relief as the Court deems appropriate.

Dated: August 30, 2019               PACHULSKI STANG ZIEHL & JONES LLP

/s/ James E. O'Neill
Jeremy V. Richards (CA Bar No. 102300)
James E. O'Neill (DE Bar No. 4042)
John W. Lucas (CA Bar No. 271038)
919 N. Market Street, 17th Floor
Wilmington, DE 91899
Tel: (302) 652-4100
Fax: (302) 652-4400
E-mail:  jrichards@pszjlaw.com
         joneill@pszjlaw.com
         jlucas@pszjlaw.com

Counsel for Debtors and Debtors in Possession

DOCS_SF:101690.5 50045/002