# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>KONA GRILL INC., et al.[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-10953 (CSS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: November 27, 2019 at 4:00 p.m. (ET)**<br>**Hearing Date: December 17, 2019 at 1:00 p.m. (ET)** |

## SUMMARY OF FIRST AND FINAL FEE APPLICATION OF PIPER JAFFRAY & CO. AS INVESTMENT BANKER AND EXCLUSIVE AGENT FOR THE DEBTORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD APRIL 30, 2019 THROUGH OCTOBER 4, 2019

| | |
|---|---|
| Name of Applicant: | Piper Jaffray & Co. ("Piper Jaffray") |
| Authorized to provide professional services to: | Debtors |
| Date of Retention: | [Docket No. 214]; June 13, 2018 (nunc pro tunc to the Petition Date) |
| Period for which compensation and reimbursement are sought | April 30, 2019 through October 4, 2019 |
| Amount of monthly Advisory Fees sought as actual, reasonable, and necessary: | $200,000.00 |
| Amount of Sale Fee sought as actual, reasonable, and necessary[2]: | $1,100,000.00 |
| Amount of expenses sought as actual, reasonable and necessary: | $5,622.71 |

This is an: _____ interim __X__ final application

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers include: Kona Grill, Inc. (6690); Kona Restaurant Holdings, Inc. (6703); Kona Sushi, Inc. (4253); Kona Macadamia, Inc. (2438); Kona Texas Restaurants, Inc. (4089); Kona Grill International Holdings, Inc. (1841); Kona Baltimore, Inc. (9163); Kona Grill International, Inc. (7911); and Kona Grill Puerto Rico, Inc. (7641). The headquarters and service address for the above-captioned Debtors is 15059 North Scottsdale Road, Suite 300, Scottsdale, Arizona 85254.

[2] As explained further herein and as shown in **Exhibit C**, the monthly Advisory Fees paid to Piper Jaffray are 50% creditable against the Sale Fee.

## SERVICES PROVIDED BY PROFESSIONAL

| Name of Professional Person | Position of the Applicant | Total Hours Worked |
|---|---|---|
| Teri Stratton | Managing Director | 301.5 |
| Jean Hosty | Director | 124.0 |
| Ashley Alonso | Associate | 101.0 |
| Isaac Oberlin | Analyst | 157.3 |
| | **Total** | **683.8** |

## EXPENSE SUMMARY

| Expenses Category | Total Expenses |
|---|---|
| Ground Transportation | $820.17 |
| Airfare | $2,892.60 |
| Lodging | $1,183.28 |
| Meals | $691.68 |
| Other | $34.98 |
| **Total** | **$5,662.71** |

DOCS_DE:226154.1 50045/002

|  |  |
|---|---|
| In re:<br><br>KONA GRILL INC., et al.[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-10953 (CSS)<br><br>(Jointly Administered)<br><br>**Objection Deadline: November 27, 2019 at 4:00 p.m. (ET)**<br>**Hearing Date: December 17, 2019 at 1:00 p.m. (ET)** |

### FIRST AND FINAL FEE APPLICATION OF PIPER JAFFRAY & CO. AS INVESTMENT BANKER AND EXCLUSIVE AGENT FOR THE DEBTORS FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD APRIL 30, 2019 THROUGH OCTOBER 4, 2019

Piper Jaffray & Co. ("Piper Jaffray") hereby applies (the "Application") to the

Court for final approval of and payment by the above-captioned debtors and debtors in possession

(the "Debtors"), for fees and expenses incurred in connection with services provided by Piper

Jaffray to the Debtors for the period April 30, 2019 through October 4, 2019 (the "Compensation

Period"). Piper Jaffray's retention by the Debtors was authorized by the Court on June 13, 2019

*nunc pro tunc* to April 30, 2019 [Docket No. 214] (the "Retention Order"). By this Application

for the Compensation Period, Piper Jaffray seeks an allowance and final approval of compensation

in the amount of $200,000.00 for monthly Advisory Fees, $1,100,000.00 for the Sale Fee (defined

below), and $5,662.71 for reimbursement of actual and necessary expenses for the Compensation

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers include: Kona Grill, Inc. (6690); Kona Restaurant Holdings, Inc. (6703); Kona Sushi, Inc. (4253); Kona Macadamia, Inc. (2438); Kona Texas Restaurants, Inc. (4089); Kona Grill International Holdings, Inc. (1841); Kona Baltimore, Inc. (9163); Kona Grill International, Inc. (7911); and Kona Grill Puerto Rico, Inc. (7641). The headquarters and service address for the above-captioned Debtors is 15059 North Scottsdale Road, Suite 300, Scottsdale, Arizona 85254.

Period, for a total allowance of $1,305,662.71. In support of this Application, Piper Jaffray respectfully states as follows:

## **BACKGROUND**

1.      Piper Jaffray was retained by the Debtors on March 4, 2019 to advise the Debtors with respect to their strategic alternatives and to assist the Debtors with the marketing and sale of the Debtors' assets on a going concern basis, and has continued to advise the Debtors since that time.

2.      The process was initiated by the Board in early 2019. Piper Jaffray assisted the Debtors in, among other things, drafting a confidential offering memorandum describing the Debtors, their operations, historical performance and future prospects (the "Confidential Information Memorandum" or "CIM") and identifying a broad array of parties that were expected to have the interest and ability to consummate a transaction on terms acceptable to the Debtors. Piper Jaffray then contacted approximately one hundred eighty-seven (187) parties, received fifty-two (52) executed non-disclosure agreements ("NDAs"), and sent the Confidential Information Memorandum to those parties that executed NDAs. Shortly after the Petition Date, the Debtors with the advisement of Piper Jaffray negotiated and finalized a stalking horse agreement with Williston Holding Company, Inc. ("Williston" or the "Stalking Horse Purchaser"). Subsequently, Piper Jaffray continued to market the opportunity to potential overbidders, but after re-engaging with 62 parties, no additional parties decided to submit a competing bid, making the Stalking Horse Purchaser the winning bidder at that time.

3.      The transaction contemplated with the Stalking Horse Purchaser (the "Stalking Horse APA") provided for cash consideration in the amount of $20.3 million, plus the assumption of approximately $11.5 million in liabilities, subject to certain adjustments. The Court

2

approved the Staling Horse APA on July 25, 2019, but Williston ultimately failed to close the sale and the Debtors terminated the Stalking Horse APA on August 1, 2019. Subsequently, Piper Jaffray worked to revive the Williston deal, while simultaneously contacting other parties who had expressed an interest in purchasing the Debtors' assets.

4. As a result of these efforts by Piper Jaffray and the Debtors' management and bankruptcy counsel, the Debtors entered into an asset purchase agreement (the "KGA APA") with Kona Grill Acquisition, LLC ("KGA"), an affiliate of The One Group. The transaction contemplated in the KGA APA provided for cash consideration in the amount of $25.0 million, plus the assumption of approximately $11 million in liabilities, subject to certain adjustments at closing, representing a higher purchase price than the Stalking Horse APA. Piper Jaffray believes the KGA APA maximized value and transaction certainty for the Debtors, their estates, and creditors and enabled the Debtors to sell substantially all of their assets as a going concern and in doing so preserved over 1,500 jobs.

5. The postpetition marketing efforts included re-initiating the marketing process postpetition in order to find potential overbidders for an auction. Beginning in May 2019, professionals from Piper Jaffray, at the Debtors' direction, began a marketing effort to reach out to select parties who had demonstrated interest prepetition, as well as any new parties that emerged. As part of this process, Piper Jaffray contacted a total of sixty-two (62) parties and sent them a summary of the Stalking Horse APA, the draft Bidding Procedures, and the Sale Notice. New interested parties were asked to participate in an initial discussion with Piper Jaffray to learn about the opportunity and in request information. Parties that demonstrated sufficient interest in the transaction were then given access to further initial due diligence information and invited to conduct calls with management as requested. Several parties conducted detailed due diligence

3

including conversations with company management and Piper Jaffray. Notwithstanding Piper Jaffray's postpetition marketing efforts, the Debtors did not receive any additional bids for the Debtors' assets by the Bid Deadline. However, upon the termination of the Stalking Horse APA, Piper Jaffray and the Debtors' other professionals were able to generate incremental interest in the Debtors' assets, resulting in the ultimate KGA APA. On August 30, 2019, the Debtors filed the motion to approve the KGA APA. Notice of the motion was served on all parties served with the original sale motion, including those parties who had expressed an interest in purchasing the Debtors' assets.

6. Upon and at all times after Williston's and KGA's bid submissions in May 2019 and August 2019, respectively, Piper Jaffray acted at the direction of the Debtors' Board. Piper Jaffray, along with the Debtors' management at Alvarez & Marsal North America, LLC ("A&M") and bankruptcy counsel, Pachulski Stang Ziehl & Jones LLP ("PSZJ"), actively participated in the vigorous, arms-length negotiation of the Bidding Procedures (for the Stalking Horse APA), Stalking Horse APA, and KGA APA, and has continued to advise the Debtors with respect to the sale and the postpetition marketing process after the commencement of the Chapter 11 Cases.

7. The sale to KGA was ultimately approved by the bankruptcy court on September 24, 2019 and closed on October 4, 2019.

4

## PROFESSIONAL COMPENSATION REQUESTED

8.    Pursuant to the Engagement Letter and Retention Order, Piper Jaffray is to be paid $50,000.00 on each monthly anniversary of the execution of the Engagement Agreement (the monthly "Advisory Fee").

9.    Also pursuant to the Engagement Letter and Retention Order, Piper Jaffray is to be paid a Sale Fee, defined in section 2(c) as $1,250,000. Such Sale Fee is to be reduced by 50% of all monthly Advisory Fees paid over the course of the engagement. **Exhibit C** provides the calculation for the net Sale Fee of $1,100,000.00 that is requested herein.

10.    Piper Jaffray submits this Application pursuant to sections 328(a) and 330 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), that certain *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* Docket No. 161 (the "Interim Compensation Order"), Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Retention Order. All services for which compensation is requested by Piper Jaffray were performed for the Debtors.

11.    Although Piper Jaffray's monthly Advisory Fee is not calculated on an hourly basis, a chart summarizing Piper Jaffray's time records on an half-hourly basis, in accordance with the Retention Order, is attached hereto as **Exhibit A**.

12.    Piper Jaffray also seeks reimbursements for reasonable, out-of-pocket expenses in the amount of $5,622.71, in accordance with the Retention Order, which are detailed in **Exhibit B**.

5

## SUMMARY OF SERVICES RENDERED BY APPLICANT

13. The services provided by Piper Jaffray to the Debtors primarily concerned the development and implementation of a process for selling or reorganizing around substantially all of the Debtors' assets. This process included substantial discussions with management, preparation of financial analyses and other materials for potential buyers and investors, identification and contact of potential buyers, investors, and substantial discussions with and presentations to potential buyers, and investors. Piper Jaffray's services were necessary to ensure that a successful bidder was in fact the highest or best bid possible under these circumstances and to maximize value to the Debtors' estates.

14. During the Compensation Period, Piper Jaffray also assisted the Debtors and their professionals by providing various services in connection with initiating, managing, and administering the marketing and sale of the Debtors' assets, addressing a wide variety of general case-related matters related to the marketing and sale of the assets, and assisting in preparation for various Court appearances relating to the sale procedures and both sale hearings.

15. As the Debtors' Investment Banker and Exclusive Agent, Piper Jaffray: (i) regularly prepared, reviewed, analyzed, revised, and responded to various e-mails and correspondence relating to the marketing and sale of the Debtors' assets; (ii) contacted and assisted potential buyers and investors in their due diligence processes; (iii) organized, coordinated, and attended meetings between potential investor and buyers and the Debtors to discuss the Debtors' business, operations, and industry; (iv) prepared various presentation and discussion materials for a number of parties including the Debtors and their advisors to address a variety of issues and topics, including, but not limited to, the status of the chapter 11 cases, key dates and timeline related to emergence and the asset sale process; (v) reviewed and assisted the Debtors' in the

6

negotiation and evaluation of stalking horse and other bids and otherwise assisted in the preparation for a potential auction; and (vi) engaged in various conferences and telephone conferences regarding the foregoing.

16.     The services provided by Piper Jaffray were necessary and benefited the Debtors by assisting the Debtors in the administration of the Cases.

## BASIS FOR RELIEF

17.     By the Retention Order, the Court specifically provided that "[p]ursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rules 2014-1 and 2016-2, and subject to the terms of this Order, the Debtors are authorized to retain and employ [Piper Jaffray] as their investment banker and exclusive agent for the proposed Transaction, effective as of the Petition Date, in accordance with the terms and conditions set forth in the Engagement Letter attached as Exhibit C to the [Retention] Application and incorporated by reference herein, and to pay fees and reasonable expenses to [Piper Jaffray] on the terms and conditions specified in the Engagement Letter, as modified herein."

18.     The Retention Order further provided that "[t]he fees and expenses payable to [Piper Jaffray] pursuant to the Engagement Letter shall be subject to review pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code, except by the U.S. Trustee, who, for the avoidance of doubt, shall retain all rights to respond or object to [Piper Jaffray's] interim and final applications on all grounds, including, but not limited to, reasonableness pursuant to section 330 of the Bankruptcy Code.

19.     Section 330 of the Bankruptcy Code provides for the award of compensation to professionals. 11 U.S.C. § 330. Section 330, by its terms, is "subject to" the

7

provisions of section 328 of the Bankruptcy Code. Id. Section 328(a) permits a debtor, with the

Court's approval, to employ a professional person "on any reasonable terms and conditions of

employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C.

328(a). Accordingly, section 328(a) of the Bankruptcy Code permits the compensation of

professionals, including investment bankers and financial advisers, on flexible terms that reflect

the nature of their services and prevailing market conditions for those services.

      20.    Courts consistently find that the purpose of section 328 of the Bankruptcy

Code is to permit the pre-approval of compensation arrangements as a method of insuring that the

most competent professionals would be available to provide services in bankruptcy cases. *See e.g.,*

*In the Matter of National Gypsum Co.*, 123 F.3d 861 (5th. Cir. 1997); *In re Westbrooks*, 202 B.R.

520, 521 (Bankr. N.D. Ala. 1996) (percentage fee arrangements "comport with the Bankruptcy

Code's goal of attracting highly qualified professionals to the bankruptcy forum"); *In re Olympia*

*Holdings Corp.*, 176 B.R. 962, 964 (Bankr. M.D. Fla. 1994). As the Court explained in *National*

*Gypsum Co.,*123 F.3d 863:

> If the most competent professionals are to be available for
> complicated capital restructuring and the development of successful
> corporate reorganization, they must know what they will receive for
> their expertise and commitment. Courts must protect those
> agreements and expectations, once found to be acceptable.

      21.    Once the terms of a professional's retention have been approved under

section 328(a) of the Bankruptcy Code, the agreed-upon compensation cannot be altered unless

the agreed terms "prove to have been improvident in light of developments not capable of being

anticipated at the tune of the fixing of such terms and conditions." 11 U.S.L. §328(a); *In re Smart*

*World Techs.*, No. 08-172-bk, 2009 WL 23341, at *3 (2d Cir. Jan. 6, 2009) ("Where the court

preapproves the terms and conditions of the retention under section 328(x), its power to amend

those terms is severely constrained"}; *In re Reimers*, 972 F.Zd 1127, 1128 (9th Cir. 1992) (compensation agreement approved under section 328(a) must be enforced in the absence of unforeseeable circumstances, and is not subject to a "reasonableness" review under section 330); *National Gypsum Co.*, 123 F.3d at 863 (same).

22.     As discussed above, Piper Jaffray provided extensive advisory services in support of the Debtors' marketing, sale, and related efforts. The professional services and related expenses that are the subject of this Application were rendered and incurred in connection with these chapter 11 cases, and in the discharge of Piper Jaffray's professional responsibilities as investment banker to the Debtors. Piper Jaffray's services have been substantial, necessary and beneficial to the Debtors and their estates. Piper Jaffray believes that the fees and expenses requested by this Application are reasonable, comparable to the compensation charged by investment banking firms of similar stature to Piper Jaffray for comparable engagements, both in and out of bankruptcy proceedings, and necessary given the variety and complexity of the issues involved in these chapter 11 cases and the need to act or respond on an expedited basis to those issues. Piper Jaffray respectfully submits that (i) its professional services were necessary and appropriate and substantially benefited the Debtors' estates; (ii) the compensation requested in this Application is in accordance with the terms of the Engagement Agreement as approved by the Retention Order pursuant to section 328(a) of the Bankruptcy Code; and (iii) no unforeseeable developments have arisen during these chapter 11 cases that would render the approval of Piper Jaffray's fees to have been "improvident" within the meaning of section 328(a) of the Bankruptcy Code.

23.     In addition, the professionals of Piper Jaffray expended a total of 683.8 hours in connection with this matter during the Monthly Compensation Period. The amount of

time spent by each of these persons providing services to the Debtors for the Monthly Compensation Period is fully set forth in the summary attached hereto as **Exhibit A**. Thus, in accordance with the factors enumerated in section 330 of the Bankruptcy Code, the amount requested is fair and reasonable given (a) the complexity of these chapter 11 cases, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, and (e) the costs of comparable services other than in a case under chapter 11 of the Bankruptcy Code.

24.     Piper Jaffray believes that the time record summary included in **Exhibit A** and the expense summary set forth in **Exhibit B** are in compliance with the requirements of Local Rule 2016-2 as modified by the Retention Order.

## CONCLUSION

THEREFORE, Piper Jaffray respectfully requests that this Court enter an order approving the allowance to Piper Jaffray of $1,300,000.00 of fees (comprising the net Sale Fee of $1,100,000.00 and $200,000 monthly Advisory Fees) and $5,662.71 of expenses during the Compensation Period.


Dated:  November 6, 2019

                                        */s/ Teri Stratton*
                                        Teri Stratton
                                        Managing Director of Piper Jaffray & Co.

DOCS_DE:226154.1 50045/002